# IN THE SUPREME COURT OF MISSISSIPPI
## NO. 98-DR-00588-SCT

*WILLIAM L. WILEY*

*v.*

*STATE OF MISSISSIPPI*

| | |
|---|---|
| DATE OF JUDGMENT: | 02/03/95 |
| TRIAL JUDGE: | HON. ANDREW C. BAKER |
| COURT FROM WHICH APPEALED: | DESOTO COUNTY CIRCUIT COURT |
| ATTORNEYS FOR APPELLANT: | ROBERT B. McDUFF |
| | TIMOTHY HESTER |
| | BRIAN P. MILLER |
| | ANTHONY R. PICARELLO, JR. |
| ATTORNEY FOR APPELLEE: | OFFICE OF THE ATTORNEY GENERAL |
| | BY:    MARVIN L. WHITE, JR. |
| NATURE OF THE CASE: | CIVIL - DEATH PENALTY - POST CONVICTION |
| DISPOSITION: | APPLICATION FOR LEAVE TO FILE MOTION TO VACATE DEATH SENTENCE DENIED - 6/3/1999 |
| MOTION FOR REHEARING FILED: | 6/9/99; denied 2/3/2000 |
| MANDATE ISSUED: | 2/10/2000 |

**EN BANC.**

**PRATHER, CHIEF JUSTICE, FOR THE COURT:**

## I. STATEMENT OF THE CASE

¶1. This post-conviction relief (PCR) case arises from the 1981 capital murder of a storeowner in the Mineral Wells community of DeSoto County. During the past seventeen years, the petitioner, William L. Wiley, has been sentenced to death three times.

¶2. Wiley was originally tried, convicted, and sentenced to death in February, 1982. On direct appeal, this Court affirmed Wiley's conviction. However, the case was remanded for resentencing, due to comments by the prosecutor regarding the reviewability of the sentencing jury's decision. *See Wiley v. State*, 449 So. 2d 756 (Miss. 1984) (*Wiley I*).

¶3. Wiley's second sentencing trial was held in June, 1984. The jury again sentenced Wiley to death, and that decision was affirmed by this Court. *Wiley v. State*, 484 So. 2d 339 (Miss. 1986) (*Wiley II*), *cert. denied Wiley v. Mississippi*, 479 U.S. 906 (1986), *overruled by Willie v. State*, 585 So. 2d 660 (Miss. 1991). Wiley's subsequent request for post-conviction relief was denied. *Wiley v. State*, 517 So. 2d 1373 (Miss. 1987) (*Wiley III*), *cert. denied Wiley v. Mississippi*, 486 U.S. 1036 (1988).

¶4. Wiley then filed a petition for writ of *habeas corpus* in the U.S. District Court for the Northern District of Mississippi. Via an unpublished memorandum, that court denied Wiley's petition.

¶5. Wiley next appealed to the U.S. Court of Appeals for the Fifth Circuit. That court held that Wiley's death sentence was improper because the sentencing jury was incorrectly instructed regarding the "especially heinous, atrocious or cruel" aggravating circumstance, pursuant to the United States Supreme Court decisions in *Clemons v. Mississippi*, 494 U.S. 738 (1988) and *Maynard v. Cartwright*, 486 U.S. 356 (1988). *Wiley v. Puckett*, 969 F. 2d 86, 105-106 (5th Cir. 1992) (*Wiley IV*). The Fifth Circuit instructed the District Court to issue a writ of *habeas corpus* unless the State of Mississippi initiated appropriate proceedings within a reasonable time. *Id.*

¶6. Wiley then filed with this Court a motion and application for life sentence, or, in the alternative, for a new sentencing hearing. In October, 1993, this Court ordered a new sentencing hearing for Wiley. *Wiley v. State*, 635 So. 2d 802 (Miss. 1993) (*Wiley V*).

¶7. In February, 1995, Wiley was sentenced, once again, to death. This Court affirmed that sentence in February, 1997. *Wiley v. State*, 691 So. 2d 959 (Miss. 1997) (*Wiley VI*), *rehearing denied Wiley v. State*, 693 So. 2d 384 (Miss. 1997) (and motion for substitution of counsel granted), *cert. denied Wiley v. Mississippi*, 522 U.S. 886 (1997).

¶8. On April 17, 1998, Wiley filed an "Application for Leave to File Motion to Vacate Death Sentence" with this Court. On July 1, 1998, Wiley filed an "Amended and Restated Application for Leave to File Motion to Vacate Death Sentence", in which he raises the following issues for consideration by this Court:

**A. Whether Wiley was denied his constitutional right to the effective assistance of counsel at his sentencing?**

> **1. Whether Wiley's trial counsel was ineffective for failing to object to the State's improper suggestions that Wiley would be paroled if the jury did not sentence him to death?**
>
> **a. at voir dire?**
>
> **b. at witness examination?**
>
> **c. at closing argument?**
>
> **2. Whether Wiley's trial counsel was ineffective for failing to oppose the complete**

**elimination of mercy and sympathy from the jury's consideration?**

**3. Whether Wiley's trial counsel was ineffective for failing to object to the State's improper "send a message" argument during closing argument?**

**B. Whether Wiley was denied his constitutional right to the effective assistance of counsel on appeal of his sentencing trial?**

**1. Whether Wiley's appellate counsel was ineffective for failing to appeal the jury's finding of the "avoiding arrest" aggravating factor?**

**a. Whether the evidence in this case can support the jury's finding on the "avoiding arrest" aggravating factor?**

**b. Whether, if the "avoiding arrest" aggravating factor is broad enough to include the evidence in this case, then that aggravating factor is unconstitutionally overbroad?**

**c. Whether, if the "avoiding arrest" aggravating factor is broad enough to include the evidence in this case, then that aggravating factor impermissibly duplicates the "robbery" aggravating circumstance?**

**2. Whether Wiley's appellate counsel was ineffective for failing to inform the court of record evidence of improper comments by the State regarding the possibility of parole?**

**C. Whether Wiley was denied his constitutional right to a fair trial?**

**1. Whether Wiley's rights were violated by the State's suggestion that Wiley would be paroled if the jury did not sentence him to death?**

**2. Whether the trial court's striking all references to mercy and sympathy from the jury instructions was unconstitutional?**

**3. Whether Wiley's rights were violated by the State's improper "send a message" argument during closing argument?**

**4. Whether the imposition of the death penalty in reliance on the "avoiding arrest" aggravating factor was unconstitutional?**

**5. Whether Wiley's rights were violated by the trial court's improper discussion with the venire about the possibility of parole?**

**6. Whether the trial court's failure to instruct the jury on a statutory mitigating factor of "diminished capacity" deprived Wiley of his rights?**

**7. Whether it was arbitrary and capricious to find that Wiley's death sentence was proportional to comparable cases?**

**D. Whether the cumulation of error in the case requires reversal?**

¶9. This Court finds that these issues are without merit. Accordingly, Wiley's motion to vacate sentence, or,

alternatively for leave to file in the trial court, is denied.

## II. LEGAL ANALYSIS

¶10. Pursuant to statute:

> Where a conviction and sentence have been appealed to this Court and affirmed, or the appeal dismissed, an application under the [Uniform Post-Conviction Collateral Relief Act] must be filed in this Court. Miss. Code Ann. § 99-39-7 (1994). This Court may grant or deny any or all relief requested in the application or allow the filing of the motion in the trial court. § 99-39-27(7)(a) & (b) (Supp.1997).

*Jackson v. State*, No. 98-DR-00708-SCT, slip op. at 2 (Miss. Jan. 28, 1999). Mississippi Code Annotated Section 99-39-21 sets forth the procedural bars and the burden of proof that the PCR petitioner must overcome:

> (1) Failure by a prisoner to raise objections, defenses, claims, questions, issues or errors either in fact or law which were capable of determination at trial and/or on direct appeal, regardless of whether such are based on the laws and the Constitution of the state of Mississippi or of the United States, shall constitute a waiver thereof and shall be procedurally barred, but the court may upon a showing of cause and actual prejudice grant relief from the waiver.

> (2) The litigation of a factual issue at trial and on direct appeal of a specific state or federal legal theory or theories shall constitute a waiver of all other state or federal legal theories which could have been raised under said factual issue; and any relief sought under this chapter upon said facts but upon different state or federal legal theories shall be procedurally barred absent a showing of cause and actual prejudice.

> (3) The doctrine of *res judicata* shall apply to all issues, both factual and legal, decided at trial and on direct appeal.

> (4) The term "cause" as used in this section shall be defined and limited to those cases where the legal foundation upon which the claim for relief is based could not have been discovered with reasonable diligence at the time of trial or direct appeal.

> (5) The term "actual prejudice" as used in this section shall be defined and limited to those errors which would have actually adversely affected the ultimate outcome of the conviction or sentence.

> (6) The burden is upon the prisoner to allege in his motion such facts as are necessary to demonstrate that his claims are not procedurally barred under this section.

Miss. Code Ann. § 99-39-21 (1994). Wiley presents several issues to be reviewed, pursuant to these statutory guidelines.

**A. Whether Wiley was denied his constitutional right to the effective assistance of counsel at his sentencing?**

¶11. Wiley first claims that he was denied effective assistance of counsel at trial.[1]

The standard for reviewing claims of ineffective assistance of counsel was set forth in *Strickland v. Washington*, 466 U.S. 668, 687, 104 S.Ct. 2052, 2064, 80 L.Ed.2d 674 (1984), and is well-settled:

Our inquiry under *Strickland* is twofold:

(1) Was defense counsel's performance deficient when measured by the objective standard of reasonable professional competence, and if so (2) Was [the appellant] prejudiced by such failure to meet that standard?

*Hansen v. State*, 649 So.2d 1256, 1259 (Miss.1994).

. . . The "defense counsel is presumed competent and the burden of proving otherwise rests on [the appellant]."*Hansen*, 649 So.2d at 1258; *McQuarter v. State*, 574 So.2d 685, 687 (Miss.1990) (holding that defendant must prove both prongs of the *Strickland* test).

"[T]his Court bases its decisions as to whether counsel's efforts were effective on the totality of the circumstances surrounding each case." *McQuarter*, 574 So.2d at 687. This Court's scrutiny of defense counsel's performance is highly deferential. See *Hansen*, 649 So.2d at 1259.

*Hodgin v. State*, 702 So. 2d 113, 116-17 (Miss. 1997).

¶12. In order to prevail on an ineffective assistance of counsel claim, "the post-conviction applicant to this Court must demonstrate with specificity and detail the elements of the claim." *Woodward*, 635 So. 2d at 808; *Foster v. State*, 687 So. 2d 1124, 1141 (Miss. 1996).

**1. Whether Wiley's trial counsel was ineffective for failing to object to the State's improper suggestions that Wiley would be paroled if the jury did not sentence him to death?**

¶13. Wiley first argues that his counsel was ineffective for failing to object to suggestions that, if Wiley were sentenced to life in prison, Wiley would be eligible for parole. The statute in effect at Wiley's third sentencing trial provided that a jury could sentence a person convicted of capital murder to life in prison or death. That statute was subsequently amended to provide that a jury could sentence a person convicted of capital murder to life in prison, life in prison without parole, or death. *See* Miss. Code Ann. § 97-3-19 (Supp. 1994).

¶14. For cases governed by the old version of the statute, this Court had held that references to the possibility of parole are inappropriate (except in habitual offender cases, where a person sentenced to life in prison would automatically be ineligible for parole). *See Wiley VI*, 691 So. 2d at 964 (quoting *Williams v. State*, 445 So. 2d 798, 813 (Miss. 1984)).

¶15. This protection is beyond that required by the United States Supreme Court. *O'Dell v. Netherland*, 521 U.S. 151, 158 (1997) ("The decision whether or not to inform the jury of the possibility of early release is generally left to the States.") (*California v. Ramos*, 463 U.S. 992, 1013, n.30 (1983)).

**a. voir dire.**

¶16. The record reflects that -- after intense questioning by the members of the venire during *voir dire* -- the trial judge admitted that parole was a possibility, if Wiley were sentenced to life in prison. After the

State concluded voir dire, and outside the presence of the jury, defense counsel moved to quash the jury panel and for a mistrial. The motion was denied. The conversations between the members of the venire and the trial judge were the main issue on direct appeal. The majority held as follows:

> Most of the cases dealing with this issue have arisen in the context of closing arguments, jury instructions, or witness's testimony. *See, e.g., Griffin v. State*, 557 So.2d 542, 553 (Miss.1990); *Jessie Derrell Williams*, 544 So.2d at 798; *Williams*, 445 So.2d at 813. The State argues that these cases should be distinguished, because the trial court in the case sub judice:
>
> . . . steadfastly maintained that the sentencing statute stated that life in prison was the punishment. He further told the jury not to speculate about what would be done in the future as that was not their concern in considering sentence. This situation is totally different than the prosecutor making an argument that a defendant should be given the death penalty because a sentence of life imprisonment would result in parole.
>
> The State would submit that this is not an error requiring reversal of this third death sentence. The trial court gave accurate information to the three prospective jurors who asked questions regarding parole eligibility, and those three jurors did not serve on the jury. The jury was never instructed to consider parole eligibility in determining the sentence to be imposed.
>
> This Court is persuaded by the State's reasoning, and finds that the case sub judice is factually distinguishable from *Williams* and its progeny; for this reason, the analysis expressed in those cases will not be extended to apply to this factual situation. *See Williams*, 445 So.2d at 813; *Griffin*, 557 So.2d 542; *Jessie Derrell Williams*, 544 So.2d 782; *Cabello*, 471 So.2d 332. The trial judge followed this Court's instructions to not speculate on parole. He emphasized that the trial court and the jury had no control over parole. When further pressured by the veniremen for a more exact answer, the trial judge gave a truthful response. Moreover, at the close of the presentation of evidence, the trial judge properly instructed the jury regarding the options of life and death. The trial judge's actions in this case did not constitute reversible error; therefore, Wiley's claim on this point is without merit.

*Wiley VI*, 691 So. 2d at 964. *See also Wilcher v. State*, 697 So. 2d 1087, 1098 (Miss. 1997) (factually distinguishing and declining to extend *Williams* analysis to a case involving *voir dire*).

¶17. Thus, this issue is *res adjudicata*. That is, Wiley unsuccessfully argued the merits of the issue on appeal, and now "is attempting to relitigate this issue under a new heading." *See Foster*, 687 So. 2d at 1136. Where the merits of the issue have been considered and rejected on direct appeal, and the appellant "has merely camouflaged the issue by couching the claim as ineffective assistance of counsel", the doctrine of *res adjudicata* applies. *See id.* at 1135- 37. If the merits of the underlying issue have been considered and rejected on direct appeal, then the appellant cannot show deficiency or prejudice in counsel's performance with regard to that issue.[2] *See id.* Therefore, Wiley's argument is *res adjudicata* and without merit.

### b. witness examination.

¶18. Wiley next contends that his trial counsel was ineffective for failing to object when the State "seized on the juror's misperceptions of the possibility of parole [created during *voir dire*] and inappropriately alluded to the possibility of parole several times during the course of the sentencing trial."

¶19. Wiley cites three exchanges. The first occurred when the prosecution was cross-examining Dr. Bill Fox, a psychologist and defense witness:

Q. He could have instead of laying in wait for 30 to 45 minutes while no one was in that store and they were getting ready to close up gone in, concealed his identity, put the gun on Mr. Turner and his daughter and got the money and left without killing them, couldn't he?

A. Uh-huh.

Q. Now, the fact that he didn't, does that suggest to you that he intended to kill or didn't intend to kill?

A. Now. I think to me it would point out, again, some of these weak internal controls, poor planning. He could have planned it. I think if there were more internal controls working, if he'd wanted to do that -- I would see this more as poor judgment on his part as opposed to --

Q. Well, his internal controls had worked apparently for all his life, the 27 years until then, had it not?

A. Like I say, I don't know all the history. I don't know of any other significant act of criminality before this. We can go along a lot and then at certain times things can come together that will interface with these internal controls, substance abuse and that, and you can get behavior that you haven't gotten before.

Q. That's the point. It could have then, and it could now?

A. Yeah, I --

Q. There's no way that your science can predict human behavior, is there?

A. No. I would -- if I'm agreeing with you, I would agree with you that Mr. Wiley needs to stay away from any kind of substance abuse, any kind of alcohol, or this type of behavior can occur again.

Q. And there's absolutely no way that you can ensure that he won't be an abuser, is there?

A. Well, you'd have to do a lot of structuring, like I said, of the environment. I don't know that we can ever say anything is a hundred percent. We can certainly take better precautions. We can try to get him in treatment for this. He's not been in treatment, I understand. We can get him in treatment. We can try to put stronger inner controls in him than he has.

The possibility of parole is not mentioned in this exchange.

¶20. The second exchange cited by Wiley occurred during the State's cross-examination of defense witness Dr. Robert Ritter (a neuropsychiatrist):

Q. Yes. So we could, in fact, say Mr. Wiley acted out his old brain predatory instincts on August 22, 1981, when he robbed and murdered Mr. Turner and blinded his daughter?

A. That would be true because at that time he had a diminished cerebral activity, cerebral ability.

Q. Yes, sir. And, of course, since that time, Mr. Wiley has been in custody?

A. Yes, sir.

Q. And, hopefully, he has not had access to any of these substances which he enjoys since he's been arrested?

A. I would assume that to be true, and I think it is true, sir.

Q. And to go back to your quotation, Biblical quotation earlier, "By their acts shall we know them," by Mr. Wiley's acts we know that on August 22, 1981, he was a robber and a murderer and an assaulter and an escaper?

A. He certainly was. And he was one other thing, two other things: He was a drunk, and he had a marginal IQ.

Q. Yes, sir. And his IQ will not improve?

A. I beg your pardon?

Q. His IQ will not improve?

A. IQ's usually become static after we reach maturity.

Q. So we don't expect Mr. Wiley's IQ to improve dramatically from this day forward?

A. No, sir.

Q. And if he had access to -- you called him a drunk -- if he had access to alcohol or narcotics or any of these other substances, because of his lack of inner control he would return right to those abuses, wouldn't he?

A. He does have that tendency, as I see it.

Q. Which means?

A. A person who has been addicted to a substance in the past is more likely to return to that substance than you or I.

Q. Which means that Mr. Wiley is capable of repeating this whole process?

A. Yes, sir.

¶21. Again, the possibility of parole was not mentioned in this exchange. Furthermore, these questions were asked on cross-examination, and dealt with Wiley's substance abuse problems, an issue which had been explored on direct examination.

¶22. The final exchange occurred during the State's cross-examination of Reverend Ronald Padgett, a defense witness and Chaplain at the Mississippi Penitentiary at Parchman:

Q. There's no -- of course, inmates don't have access to drugs or alcohol or shouldn't have?

A. Okay, shouldn't have.

Q. It's a whole lot different than an outside environment?

A. Yes, it is.

¶23. There is no mention of parole in this exchange. Furthermore, this Parchman Chaplain had testified to Wiley's good behavior in prison. The State appears to be impeaching this testimony by showing that the Chaplain did not really know Wiley, and did not know how Wiley behaved prior to being imprisoned. Thus, Wiley's argument that these questions improperly refer to the possibility of parole is not an accurate depiction of the record.

¶24. Moreover, these questions appear to be in response to the testimony propounded by these defense witnesses during direct examination. "The State is allowed to rebut mitigating evidence through cross-examination, introduction of rebuttal evidence or by argument." *Turner v. State*, No. 97-DP-00583-SCT, 1999 WL 47758, at *13 (Miss. Feb. 4, 1999) (citing *Bell v. State*, 725 So. 2d at 836, 849-50 (Miss. 1998); *Davis v. State*, 684 So.2d 643, 655 (Miss.1996)).

¶25. Also, even if counsel's failure to object to these questions could be considered deficient, Wiley has proven no prejudice. Therefore, this argument is without merit. *See Hodgin*, 702 So. 2d at 116-17 (Miss. 1997) (reiterating that burden is on petitioner to prove both prongs of the *Strickland* test).

### c. closing argument.

¶26. Wiley also argues that his trial counsel was ineffective in handling the following portion of the State's closing arguments:

Well, I've seen a lot of psychiatrists and a lot of psychologists take this witness chair and others throughout this state and elsewhere, and I guarantee you one thing: They can't tell you what is a killer by instinct and what isn't. As the good doctor said, the science of the human mind is not an exact science. You can't look at a guy and say he's going to kill or he's not.

And with all due respect for Mr. Jones' statement that this was a one-time thing, this was a one-time thing, there is no proof to support it. You don't know, I don't know, Judge Baker don't know, the Turners don't know, Mr. Kelly don't know, Mr. Wiley's lawyers don't know, his family don't know whether it's a one-time thing or not and perhaps he don't know.

¶27. The record reflects that defense counsel immediately objected:

MR. [DEFENSE ATTORNEY] JONES: Your Honor, we object to that. That's speculation. Mr. Williams is speculating about other -- there's no proof of that. He has to stay within the bounds of the proof. That's not proper argument.

THE COURT: Let's stay with what's in evidence and logical, reasonable inferences that may be drawn.

BY [PROSECUTOR] WILLIAMS: I think it is supported by the proof, ladies and gentlemen.

THE COURT: I was trying to think of the testimony of the witnesses.

MR. WILLIAMS: I think the doctor said that it was probably not likely if there was treatment, if you

remember the dialogue between the doctor and myself on cross.

THE COURT: Yes, sir.

¶28. Wiley acknowledges that his attorney objected, but argues that his attorney objected for the wrong reason:

Counsel for Wiley objected to this argument as "speculative" because there was no proof of other crimes. Apparently, Wiley's counsel believed that the State was implying that Wiley had been convicted of previous crimes.

In fact, the State's argument was not that Wiley had committed other crimes in the past, but rather that Wiley was capable of killing in the future . . . if released on parole.

¶29. On direct appeal, this Court rejected Wiley's claims that these comments improperly referred to prior criminal conduct, and were unsupported by the record. *Wiley VI*, 691 So. 2d at 964-65. Thus, this Court has already ruled on the propriety of these comments (albeit in a different context). Furthermore, defense counsel lodged a contemporaneous objection. In addition, the comment at issue did not mention the possibility of parole, and, this Court has held that, where such comments "cannot be construed as arguing the possibility of parole" and are "made in response to defense counsel", then "[t]he prosecutor's remarks were proper in rebuttal." *Faraga v. State*, 514 So. 2d 295, 303-04 (Miss. 1987) (citing *Evans v. State*, 422 So. 2d 737 (Miss. 1982)). For all these reasons, Wiley has failed to demonstrate the requisite deficiency and prejudice to support his ineffective assistance of counsel claim on this point. *See Hodgin*, 702 So. 2d at 116-17 (Miss. 1997) (reiterating that burden is on petitioner to prove both prongs of the *Strickland* test).

### 2. Whether Wiley's trial counsel was ineffective for failing to oppose the complete elimination of mercy and sympathy from the jury's consideration?

¶30. Wiley further argues that "[t]rial counsel's failure to prevent the trial court's excision of all references to mercy and sympathy was unreasonable and fell below an objective standard of reasonable representation in a capital case." The record reflects that, during the discussion of proposed C-3, the following transpired:

MR. [DEFENSE ATTORNEY] JONES: Your Honor, one last objection to this instruction is that we feel to be totally correct it needs to go forward and say that, Even if you find the aggravating circumstances outweigh the mitigating circumstances, you can impose a life sentence.

THE COURT: You're tendering a mercy instruction, aren't you?

MR. JONES: Yes, sir. But that language would help us with this instruction because I think it leaves the jury with the -- it just leaves them with the feeling that it's a weighing process, if one outweighs the other, you've got to go with the one that wins, and that's not the law.

MR. [PROSECUTOR] WILLIAMS: Your Honor, this is the approved instruction that has been dealt with requesting mercy.

The matter was then discussed at length, and, ultimately, the instruction was not revised to include mercy.

¶31. The record also indicates that one sentence in proposed instruction D-7 read: "A mitigating

circumstance is any aspect of the offense or the offender that, in justice and in mercy, should be considered in favor of a sentence less than death." Upon the State's motion, and without objection from the defense, the phrase "and in mercy" was deleted from that instruction. The amended instruction was given.

¶32. In addition, the State objected to the words "sympathy" and "mercy" in proposed instruction D-20, which read: "Mitigating factors are facts that, while they do not justify or excuse the crime, nevertheless in fairness, sympathy, and mercy to William Wiley, must be considered by you as extenuating or reducing the degree of his blame or punishment. You may not, however, be swayed by prejudice or public opinion." In light of the trial court's previous denial of a sympathy instruction, defense counsel asked the trial court to "perhaps strike sympathy and mercy and grant the rest of the instruction." The instruction was granted, as revised.

¶33. Wiley argues that his counsel was unfamiliar with the law on this subject, and allowed the trial judge to strike all references to mercy and sympathy from the instructions. To the contrary, however, the record reflects that defense counsel argued for mercy instructions, albeit unsuccessfully.

¶34. Wiley argues that, by striking the references to mercy and sympathy from the jury instructions, the trial judge, in effect, instructed the jury to disregard mercy and sympathy. This is a huge analytical leap. Clearly, denying a proposed mercy instruction can be distinguished from instructing the jury to disregard mercy altogether.

¶35. It is true that the jury can not be instructed to totally disregard sympathy or mercy. *See Evans v. State*, 725 So. 2d 613, 691 (Miss. 1997). However,

> [w]e have held that mercy instructions are not required and further, that their issuance is within the discretion of the circuit court. *Foster v. State*, 639 So.2d 1263, 1301 (Miss.1994); *Jenkins v. State*, 607 So.2d 1171, 1181 (Miss.1992); *Hansen v. State*, 592 So.2d 114, 150 (Miss.1991). In *Jenkins*, where no reversible error was found in the lower court's refusal to grant a mercy instruction, it was explained that:
>
> The recent decisions of this Court and of the United States Supreme Court enumerate that a mercy instruction is not required at trial. In *Ladner* [*v. State*, 584 So.2d 743, 761 (Miss.1991) ], we held that a defendant "has no right to a mercy instruction." *Ladner*, 584 So.2d at 761. In *Saffle v. Parks*, 494 U.S. 484, 492-93, 110 S.Ct. 1257, 1262-63, 108 L.Ed.2d 415, 427-28 (1990), the U.S. Supreme Court stated that the giving of a mercy instruction results in a decision based upon whim and caprice. Thus, the lower court was within its discretion when it denied the mercy instruction below.
>
> *Jenkins*, 607 So.2d at 1181. *See Foster*, 639 So.2d at 1299-1300 (instruction directing jury that it need not find any mitigating circumstances to return a life sentence found to be a mercy instruction).

*Jackson*, 684 So. 2d at 1213, 1239 (Miss.1996). *See also Doss v. State*, 709 So. 2d 369, 394 (Miss. 1997); *Walker v. State*, 671 So. 2d 581, 613 (Miss. 1996).

¶36. In fact, this Court and the U.S. Supreme Court have held that a jury can properly be cautioned against being swayed by sympathy, as long as the jury is not instructed to totally disregard sympathy. *See Evans*, 725 So. 2d at 691 (citing *California v. Brown*, 479 U.S. 538, 542-43, 107 S.Ct. 837, 839-40, 93 L.Ed.2d 934 (1987)); *Ballenger v. State*, 667 So. 2d 1242, 1264 (Miss. 1995). The basis of these holdings is the understanding that "[t]he State must not cut off full and fair consideration of mitigating

evidence; but it need not grant the jury the choice to make the sentencing decision according to its own whims or caprice." ***Holland v. State***, 705 So. 2d 307, 352 (Miss. 1997)

¶37. Moreover, the jury received the "catch-all" instruction on mitigating circumstances. That is, the jury was instructed to consider, as a mitigating factor, any other matter, any other aspect of the defendant's character or record, and any other circumstance of the offense brought before them during the trial, which the jury, deemed to be mitigating on behalf of the defendant. "This Court long has accepted the use of a 'catch-all' to encompass any mitigating circumstances not specifically enumerated under Miss. Code Ann. § 99-19-101(6)." ***Jackson***, 684 So. 2d at 1238.

¶38. Thus, even if defense counsel's handling of the proposed mercy instructions could be considered deficient, Wiley has not been prejudiced in this case. That is, Wiley was not entitled to such an instruction anyway. Furthermore, the instructions did not preclude the jury from considering mercy or sympathy. Therefore, Wiley's argument on this point is without merit.

### 3. Whether Wiley's trial counsel was ineffective for failing to object to the State's improper "send a message" argument during closing argument?

¶39. Wiley argues that his trial counsel was ineffective for failing to object to the following comments, made during the prosecutor's closing arguments:

> Now, I think it's high time that we have a citizen reaction. It should be made clear to William [Wiley] and to anyone else for that matter that the laws of this county are going to be severely enforced with the most severe penalty when our innocent victims, our blameless victims are slaughtered, are blinded, whose lives are wrecked without any fault of their own. We ought to make it crystal clear. I suggest to you, ladies and gentlemen of the jury, that the verdict in this case is a verdict that truth dictates and justice demands.

* * *

> Ladies and gentlemen, folks who do these things are accountable for their actions. They should be held responsible for their actions. My God, we're not barbarians. We've got laws on our books that are there to protect the innocent people who make up the citizens of this county. That's what they're there for. They protect you. They protect your family. They protect your friends. They protect your loved ones. They even protect the folks you don't like. And they need to be enforced. Folks need to understand that when you commit crime like this, you're going to be held accountable. It's just that simple.

¶40. This Court has "cautioned prosecutors to refrain from using this type of argument." ***Wells v. State***, 698 So. 2d 497, 513 (Miss. 1997) (citing ***Hunter v. State***, 684 So.2d 625, 637 (Miss.1996); ***Williams v. State***, 522 So.2d 201, 209 (Miss.1988)). However, in recent cases, this Court has acknowledged that the warning expressed in previous cases is inapplicable to closing arguments during the sentencing phase of capital murder cases:

> . . . [T]he danger inherent in the "send a message" argument is that jurors will neglect their duty to determine whether "the evidence showed the defendant to be guilty of the crime charged." This danger does not exist at the sentencing phase, where the defendant has already been found guilty of capital murder. The sole determination to be made at this point is whether the death penalty should be

imposed. We choose not to fault the prosecution for arguing that the "message" conveyed by a death penalty verdict would be different than that urged by the defense. To do so would be disingenuous given the inescapable reality that deterrence is, in fact, an established goal of imposing the death penalty, which goal necessarily entails, to some extent, sending a message. The trial court did not err in permitting this argument by the prosecution.

*Wells v. State*, 698 So. 2d at 513-14 (Miss. 1997) (citations omitted); *Holly v. State*, 716 So.2d 979, 985 (Miss. 1998).

¶41. Given this authority, Wiley's argument is without merit. That is, even if defense counsel's performance could be considered deficient (for failing to object to the prosecutor's comments), there was no resulting prejudice. *See Hodgin*, 702 So. 2d at 116-17 (Miss. 1997) (reiterating that burden is on petitioner to prove both prongs of the *Strickland* test).

### B. Whether Wiley was denied his constitutional right to the effective assistance of counsel on appeal of his sentencing trial?

¶42. Wiley also claims that he was denied effective assistance of counsel on appeal.

> The standard of acceptable performance by an attorney is the same for appellate performance as it is for trial performance. *Foster v. State*, 687 So.2d 1124, 1138 (Miss.1996). One who claims ineffective assistance of counsel must show both professional error and resulting prejudice. It is clear that there is no constitutional entitlement to errorless counsel. *Cabello v. State*, 524 So.2d 313, 315 (Miss.1988). . . . If a post-conviction claim fails on either of the *Strickland* prongs, the inquiry ends. *Foster*, 687 So.2d at 1130 (citing *Neal v. State*, 525 So.2d 1279, 1281 (Miss.1987)).

*Williams v. State*, 722 So. 2d 447, 450-51 (Miss. 1998); *Foster v. State*, 687 So. 2d 1124, 1138 (Miss. 1996).

### 1. Whether Wiley's appellate counsel was ineffective for failing to appeal the jury's finding of the "avoiding arrest" aggravating factor?

¶43. Wiley contends that his appellate counsel should have challenged the jury's finding that the capital offense was committed for the purpose of avoiding or preventing lawful arrest. The record reflects that this was one of two aggravating factors found by the jury.[3] The record also indicates that defense counsel unsuccessfully objected to the inclusion of the "avoiding arrest" aggravator in the sentencing instructions.

¶44. The adverse ruling on this objection was not raised for consideration in Wiley's direct appeal to this Court. Wiley lists three arguments to support his claim that appellate counsel was ineffective for failing to pursue this issue:

### a. Whether the evidence in this case can support the jury's finding on the "avoiding arrest" aggravating factor?

¶45. First, Wiley claims that the evidence was insufficient to support this aggravating circumstance. In support of his argument, Wiley cites the fact that one of the victims of the crime was not killed. Wiley also claims that there are no other facts to demonstrate that he attempted to avoid arrest. Wiley contends that this was a "botched" robbery, which resulted in a murder, but not a murder committed to avoid arrest.

¶46. "The standard for reviewing the sufficiency of the evidence to support an 'avoiding lawful arrest' instruction is well-settled[.]" ***Woodward v. State***, 726 So. 2d 524, 541 (Miss. 1997).

> Each case must be decided on its own peculiar facts. If there is evidence from which it may be reasonably inferred that a substantial reason for the killing was to conceal the identity of the killer or killers or to 'cover their tracks' so as to avoid apprehension and eventual arrest by authorities, then it is proper for the court to allow the jury to consider this aggravating circumstance.

***Chase v. State***, 645 So. 2d 829, 858 (Miss. 1994) (quoting ***Hansen v. State***, 592 So.2d 114, 153 (Miss.1991)).

¶47. "Thus, it is this Court's role to inquire into whether there is any credible evidence upon which the jury could find the aggravating circumstance in question."' ***Woodward***, 726 So. 2d at 541 (quoting ***Carr v. State***, 655 So.2d 824, 854 (Miss. 1995)). In the case *sub judice*, Wiley fired three shots, which killed one of the two witnesses to the robbery, and seriously injured the other witness. The decedent, a storeowner, knew Wiley, a patron of the store. Wiley left the murder weapon and a box (which had contained a money bag) in a nearby, thickly wooded area that had dense undergrowth. The area was described as "gullies, briars, it was just one big thicket, it was just almost impenetrable." In addition, Wiley left the money bag "laying in some weeds", in a field near a "dirt road".

¶48. The victims in this case knew Wiley. Furthermore, Wiley's efforts to dispose of and/or conceal the evidence of his crime are sufficient to support the avoiding arrest instruction. That is, there is evidence from which the jury could have reasonably inferred that a substantial reason for the murder was to conceal Wiley's identity, or cover his tracks, so as to avoid apprehension and eventual arrest. Therefore, the granting of the instruction on this aggravator was proper. ***See generally Woodward***, 726 So. 2d at 541 (the fact that the defendant threw the murder weapon in a creek could reasonably indicate that he did not want to be arrested).

### b. Whether, if the "avoiding arrest" aggravating factor is broad enough to include the evidence in this case, then that aggravating factor is unconstitutionally overbroad?

¶49. Wiley also argues that, if the "avoiding arrest" aggravator is applicable to this case, then it is unconstitutionally overbroad. He contends that, if all that is required to support an instruction on the "avoiding arrest" aggravator is the killing of a victim, then all felony murders would, by definition, be committed for the purpose of avoiding arrest. That is, Wiley asserts that the "avoiding arrest" aggravator does not genuinely narrow the class of persons eligible for the death penalty. Wiley places great emphasis on the fact that the second gunshot victim (the decedent's daughter) was not killed. That is, one of the witnesses to the crime was left alive.[(4)]

¶50. A similar argument was considered and rejected in ***Walker v. State***, 671 So. 2d 581, 611 (Miss. 1995):

> Walker argues that because every murder necessarily eliminates a witness to that crime, the avoiding arrest aggravator must be given with a limiting instruction channeling the jury's focus to those situations where there is specific evidence demonstrating that one of the purposes behind the killing was the killer's desire to avoid detection and apprehension for an underlying crime. ***See State v. Williams***, 304 N.C. 394, 284 S.E.2d 437, 455 (1981). However, Walker compares our law to that of

surrounding jurisdictions and concedes, "Mississippi, like our sister States, does not equate the killing of the victim with the elimination of a witness in every case."

Walker's contention that this aggravator must be accompanied by a limiting instruction has been repeatedly rejected by this Court. In *Hansen v. State*, 592 So.2d 114, 152 (Miss.1991). The Court stated:

It is argued some sort of limiting instruction need be given to narrow this aggravator. In *Leatherwood v. State*, 435 So.2d 645, 651 (Miss.1983), we rebuffed this contenti on, stating, if there is evidence from which it may be reasonably inferred that a substantial reason for the killing was to conceal the identity of the killer or killers or to 'cover their tracks' so as to avoid apprehension and eventual arrest by authorities, then it is proper for the court to allow the jury to consider this aggravating circumstance.

*Id.* at 152-53.

*Walker*, 671 So. 2d at 611.

In *Gray v. Lucas*, the Fifth Circuit rejected almost identical contentions to those made here. 677 F.2d [1086] at 1109- 1110 [ (5th Cir.1982) ]. It noted that the Mississippi courts had limited the application of the circumstances "to refer to purposefully killing the victim of an underlying felony to avoid or prevent arrest for that felony." So construed, the court observed that this factor was directed to a legitimate state interest and was "not so broad that it comprehends an impermissibly large group of murders." *Id.* at 1110.

*Chase v. State*, 645 So. 2d 829, 858 (Miss. 1994). Therefore, this aggravating factor, as construed, is not overly broad.

¶51. Furthermore, Wiley's assertion is based on the premise that, other than the murder, there is no evidence of avoiding lawful arrest. As discussed earlier, there is evidence from which it could reasonably be inferred that Wiley committed the murder to avoid lawful arrest. Therefore, this argument is based on a false premise and is without merit.

### c. Whether, if the "avoiding arrest" aggravating factor is broad enough to include the evidence in this case, then that aggravating factor impermissibly duplicates the "robbery" aggravating circumstance?

¶52. Wiley further argues that, if the "avoiding arrest" aggravator is applicable to this case, then the aggravator impermissibly duplicates the other aggravating circumstance found by the jury (ie: that the capital offense was committed while Wiley was engaged in the commission of a robbery).

¶53. These arguments are basically a reiteration of those raised in the preceding subsection. As discussed above, more evidence is required to support the "avoiding arrest" instruction than evidence of a robbery and a murder. Therefore, Wiley's contentions on this point are without merit.

¶54. Thus, Wiley's ineffectiveness of counsel claim on this point is without merit. That is, even if appellate counsel's performance could be considered deficient for failing to raise the issue of the "avoiding arrest"

instruction, Wiley has not proven the requisite prejudice to support an ineffectiveness of counsel claim. Therefore, Wiley's arguments on this point fail. *See Hodgin*, 702 So. 2d at 116-17 (Miss. 1997) (reiterating that burden is on petitioner to prove both prongs of the *Strickland* test).

**2. Whether Wiley's appellate counsel was ineffective for failing to inform the court of record evidence of improper comments by the State regarding the possibility of parole?**

¶55. As stated earlier, Wiley contends that defense counsel referred to the possibility of parole during cross-examination of defense witnesses and during closing arguments. On direct appeal, however, Wiley's counsel only assigned error to the mention of parole during *voir dire*. As previously noted, this Court affirmed, and distinguished the comments made during *voir dire* in this case from other cases, which had been reversed for similar reasons. Wiley now argues that -- if the other alleged instances of the mention of parole had been brought to this Court's attention -- then this case could not be distinguished from the cases which have condemned the mention of parole.

¶56. However, as stated earlier, the possibility of parole was not mentioned in any of the portions of the record cited by Wiley. Therefore, this argument is not supported by the record. Moreover, even if the performance of Wiley's counsel could be considered deficient on this point, Wiley has not proven any resulting prejudice. Thus, this argument is without merit. *See Hodgin*, 702 So. 2d at 116-17 (Miss. 1997) (reiterating that burden is on petitioner to prove both prongs of the *Strickland* test).

## C. Whether Wiley was denied his constitutional right to a fair trial?

¶57. Wiley next argues that he was denied his constitutional right to a fair trial, and cites several assignments of error. Each of these arguments is procedurally barred, because they "were capable of determination at trial and/or on direct appeal". *See* Miss Code Ann. § 99-39-21 (1) (1994). *See also Foster v. State, 687 So. 2d 1124, 1135 (Miss. 1996) ("[P]ost-conviction relief is very limited and deals with only those issues undetectable at trial or the appellate level.").*

*¶58. Furthermore, sub-issues 5, 6, and 7 were considered and rejected on direct appeal, and are, therefore, barred by the doctrine of res adjudicata. See Miss. Code Ann. 99-39-21 (3) (1994) ("The doctrine of res judicata shall apply to all issues, both factual and legal, decided at trial and on direct appeal."). See also Lockett v. State, 614 So. 2d 898, 902 (Miss. 1992)("Rephrasing direct appeal issues for post-conviction relief purposes will not defeat the procedural bar of res judicata.") . Furthermore, Wiley has failed to prove actual prejudice, as is required by the PCR statutes. For all these reasons, the following issues are without merit.*

*1. Whether Wiley's rights were violated by the State's suggestion that Wiley would be paroled if the jury did not sentence him to death?*

*¶59. Wiley argues that the State repeatedly and improperly suggested that Wiley could kill again, if he were paroled. The only comment Wiley cites specifically is the "one-time thing" comment, made during the prosecutor's closing remarks. On direct appeal, Wiley also argued that this comment was improper, and cited a different reason. Therefore, consideration of this issue is procedurally barred under Miss. Code Ann. Section 99-39-21 (2) (1994), which provides that:*

*The litigation of a factual issue at trial and on direct appeal of a specific state or federal legal theory or theories shall constitute a waiver of all other state or federal legal theories*

*which could have been raised under said factual issue; and any relief sought under this chapter upon said facts but upon different state or federal legal theories shall be procedurally barred absent a showing of cause and actual prejudice.*

**In addition, consideration of this issue is procedurally barred under Miss. Code Ann. Section 99-39-21 (1) (1994), because it was "capable of determination at trial and/or on direct appeal". See Miss Code Ann. § 99-39-21 (1) (1994).**

**¶60. Furthermore, even if this Court were to consider the merits of this issue, Wiley's argument would fail. The comment cited by Wiley did not mention parole. This Court ruled that the comment was made in rebuttal to defense counsel's remarks, and was not reversible error. Wiley VI, 691 So. 2d at 964-65. See also Faraga, 514 So. 2d at 303-04 (affirming where comment does not refer to parole and is proper rebuttal) (citing Evans, 422 So. 2d 737). Thus, even on the merits, this argument fails.**

**2. Whether the trial court's striking all references to mercy and sympathy from the jury instructions was unconstitutional?**

**¶61. In addition, Wiley argues that the trial judge erred by striking from the jury instructions all references to mercy and sympathy. He contends that, in effect, the trial judge instructed the jury not to consider sympathy and mercy.**

*The issue of whether the instructions granted or rejected were error by the trial judge should have been raised on the direct appeal. Procedural bars of waiver, different theories, and res judicata and exception thereto as defined in post-conviction relief statute are applicable in death penalty post- conviction relief application. Lockett v. State, 614 So.2d 888 (Miss.1992), cert. denied, 510 U.S. 1040, 114 S.Ct. 681, 126 L.Ed.2d 649 (1994). Post-conviction relief is not granted upon facts and issues which could or should have been litigated at trial and on appeal. "The doctrine of res judicata shall apply to all issues, both factual and legal, decided at trial and on direct appeal." Miss. Code Ann. § 99-39-21(3) (Supp.1994). Thus, this Court will not engage in a full blown argument about whether the instructions were erroneously excluded or whether those admitted were sufficient, as those issues are res judicata.*

**Foster v. State, 687 So. 2d 1124, 1138 (Miss. 1996).**

**¶62. Even if Wiley's argument were not procedurally barred, it would fail. As stated earlier, a capital murder defendant is not entitled to a sympathy instruction or a mercy instruction, although the trial judge has discretion to grant such an instruction. See Jenkins, 607 So.2d at 1181. The jury cannot be instructed to disregard sympathy altogether. See Evans, 725 So. 2d at 691. However, they may be cautioned against being swayed by such considerations. See id.**

**¶63. Wiley argues that, by refusing to grant mercy instructions, the trial judge, in effect, instructed the jury not to consider mercy. This is not true. The trial judge was within his discretion in refusing the mercy instructions -- and, in fact, could have gone further, and instructed the jury not to be swayed by such considerations. The record reflects that the jury was not instructed to disregard mercy altogether. Wiley's argument to the contrary is a misstatement**

*of the facts and the law.*

*3. Whether Wiley's rights were violated by the State's improper "send a message" argument during closing argument?*

*¶64. As stated previously, this issue is procedurally barred under Miss Code Ann. Section 99-39-21 (1) (1994). See Foster v. State, 687 So. 2d at 1135. However, even if consideration of this issue were not barred, Wiley's argument would fail. That is, the "danger inherent in the 'send a message' argument . . . does not exist at the sentencing phase . . . ". Wells, 698 So. 2d at 513-14; Holly, 716 So.2d at 985. Therefore, Wiley's argument is without merit.*

*4. Whether the imposition of the death penalty in reliance on the "avoiding arrest" aggravating factor was unconstitutional?*

*¶65. Wiley next argues that the evidence was insufficient to support the jury's finding that the murder was committed for the purpose of avoiding or preventing a lawful arrest. ". . . [T]his claim was not raised on appeal. Therefore, without making the necessary showing of cause and actual prejudice, this claim is barred from belated consideration on post-conviction review." Foster v. State, 687 So. 2d 1124, 1140 (Miss. 1997).*

*¶66. Furthermore, as previously discussed, the evidence in this case was sufficient to support the avoiding arrest aggravator. Therefore, even if this issue were not procedurally barred, Wiley's argument would fail.*

*5. Whether Wiley's rights were violated by the trial court's improper discussion with the venire about the possibility of parole?*

*¶67. Wiley next argues that the trial judge should have granted a mistrial, following the conversation about the possibility of parole, which occurred during voir dire. As discussed earlier, this issue was considered and rejected on direct appeal. See Wiley VI, 691 So. 2d at 964. The issue is, therefore, res adjudicata and without merit. See Miss. Code Ann. § 99-39-21 (3) (1994). See also Lockett, 614 So. 2d at 902.*

*6. Whether the trial court's failure to instruct the jury on a statutory mitigating factor of "diminished capacity" deprived Wiley of his rights?*

*¶68. Wiley also argues that the trial judge erred by failing to instruct the jury on diminished capacity. This argument is without merit, and was expressly rejected on direct appeal, when this Court held that the evidence did not support a diminished capacity instruction. Wiley VI, 691 So. 2d at 965-66. The issue is, therefore, res adjudicata and without merit. See Miss. Code Ann. § 99-39-21 (3) (1994). See also Lockett, 614 So. 2d at 902.*

*7. Whether it was arbitrary and capricious to find that Wiley's death sentence was proportional to comparable cases?*

*¶69. Wiley further argues that the death sentence is not proportionate in this case. This Court considered the proportionality of Wiley's death sentence on direct appeal, and found that -- considering the crime and the defendant -- the imposition of the death penalty in this case was*

*proportionate. Wiley VI, 691 So. 2d at 967. The issue is, therefore, res adjudicata and without merit. See Miss. Code Ann. § 99-39-21 (3) (1994). See also Lockett, 614 So. 2d at 902.*

*D. Whether the cumulation of error in the case requires reversal?*

*¶70. Wiley's final argument is that the cumulative error in this case requires reversal. "This Court has held that the cumulative effect of errors in the trial court may warrant reversal even when the instances taken separately do not." Ballenger v. State, 667 So. 2d 1242, 1273 (Miss. 1995). See, e.g., Davis v. State, 684 So. 2d 643, 667 (Miss. 1996); Russell v. State, 607 So. 2d 1107, 1117 (Miss. 1992); Hansen v. State, 592 So. 2d 114, 142 (Miss. 1991).*

*¶71. The question under the cumulative error rule, is whether the defendant has been denied his substantial right to a fair trial. See Hansen, 592 so. 2d at 142. "There never has been a perfect trial. As long as humans conduct and participate in trial of lawsuits, there will not be such a trial. This Court has said many times that a defendant is not entitled to a perfect trial, only to a fair trial." Walker v. State, 671 So. 2d 581, 629-30 (Miss. 1995).*

*¶72. Moreover, the issues raised in Wiley's PCR motion are without merit. Where there is "no reversible error in any part, . . . there is no reversible error to the whole." McFee v. State, 511 So. 2d 130, 136 (Miss. 1986)).*

### III. <u>CONCLUSION</u>

*¶73. The issues raised in Wiley's motion to vacate the conviction, or, alternatively, for leave to file in the trial court, are without merit. Therefore, the motion is denied.*

*¶74. APPLICATION FOR LEAVE TO FILE MOTION TO VACATE DEATH SENTENCE DENIED.*

*PITTMAN, P.J., SMITH, WALLER AND COBB, JJ., CONCUR. SULLIVAN, P.J., DISSENTS WITH SEPARATE WRITTEN OPINION JOINED BY BANKS, McRAE AND MILLS, JJ.*

*SULLIVAN, PRESIDING JUSTICE, DISSENTING:*

*¶75. Citing our prior decisions in Wells v. State, 698 So. 2d 497, 513-14 (Miss. 1997) and Holly v. State, 716 So. 2d 979, 985 (Miss. 1998), the majority concludes that our repeated warnings against use of the "send a message" argument do not apply to closing arguments during the sentencing phase of capital murder cases. I disagree and therefore respectfully dissent.*

*¶76. In Wells, this Court relied on language from our previous decision in Williams v. State, 522 So. 2d 201, 209 (Miss. 1988), for the premise that the only danger in using the "send a message"*

*argument is that the jury might base its decision to convict on something other than the weight and sufficiency of the evidence. The Wells Court therefore rationalized that no danger existed in use of the "send a message" argument during the sentencing phase of a capital murder trial.*[(5)](#) *This reasoning is flawed. The statement we made in Williams regarding the harmful effect of the "send a message" argument was aimed at the specific circumstances of that case, in which the prosecutor argued that the jury should convict Williams in order to "make the statement clearly, steadfastly, and unequivocally that law or order exists for everyone in Harrison County." Williams, 522 So. 2d at 208. We did not suggest that conviction on improper grounds was the only danger inherent in use of the "send a message" closing argument. The Wells Court's reliance on Williams for that proposition is misplaced.*

*¶77. The majority's position regarding use of the "send a message" argument in Wells, and here, does not follow our standard of review in death penalty cases:*

> *On appeal to this Court convictions of capital murder and sentences of death must be subjected to what has been labeled 'heightened scrutiny.' Under this method of review, all bona fide doubts are to be resolved in favor of the accused because 'what may be harmless error in a case with less at stake becomes reversible error when the penalty is death.'*

*Balfour v. State, 598 So. 2d 731, 739 (Miss. 1992) (citations omitted) (quoting Williamson v. State, 512 So. 2d 868, 872 (Miss. 1987)). The "send a message" argument is even more harmful when used during the sentencing phase of a capital murder trial in which the jury is given the task of deciding whether the defendant should be sentenced to death. By improperly asking the jury to "send a message" through their sentencing, the prosecutor essentially asks the jury to make an example of the defendant by sentencing him to execution.*

*¶78. Our statutory sentencing scheme in capital murder cases required the jury in Wiley's case to weigh aggravating and mitigating circumstances to determine whether the defendant should receive a life sentence or the death penalty. See Miss. Code Ann. § 99-19-101 (1994). Sending an anti-crime message to the community at large is not one of the factors to be considered by the jury in its decision on whether to sentence a defendant to death. This Court should not condone the continued use of the improper "send a message" argument, particularly in capital murder cases where the potential impact of an unfair trial is even more profound. I would therefore overrule that portion of Wells and its progeny, including Holly, which hold that the "send a message" argument is not harmful in the sentencing phase of capital murder cases.*

*¶79. Section 99-19-105(3) of the Mississippi Code requires this Court to review the sentencing process in all cases in which the death penalty is imposed to determine in part "[w]hether the sentence of death was imposed under the influence of passion, prejudice or any other arbitrary factor . . . ." Miss. Code Ann. § 99-19-105(3)(a) (Supp. 1998). The goal of sending a message to the citizens of this State regarding an anti-crime agenda is certainly an arbitrary factor. As Wiley points out in his amended memorandum, the prosecutor's "send a message" argument was the last point heard by the jury before beginning its deliberations. We cannot know whether the jury in this case was persuaded to sentence Wiley to death in order to further that goal, rather than based upon the proper statutory sentencing process. I would grant Wiley's motion for post-conviction relief, vacate the sentence of death currently pending against him, and remand this*

*case to the DeSoto County Circuit Court for resentencing.*

*BANKS, McRAE AND MILLS, JJ., JOINS THIS OPINION.*

*1. This is Wiley's first opportunity to raise the issue of effectiveness of counsel. Wiley had the same attorneys at trial and on direct appeal. He is now represented by different attorneys. See Woodward v. State, 635 So. 2d 805, 807-08 (Miss. 1993) ("Where the same counsel represents the defendant at trial and on direct appeal, the claim [of ineffective assistance of counsel] is procedurally viable on application for post-conviction relief.")*

*2. This is particularly true, given that trial counsel moved for a mistrial, and to quash the jury panel. When these efforts failed, it is difficult to see what more trial counsel could have done.*

*3. The jury also found that the capital offense was committed while the defendant was engaged in the commission of a robbery.*

*4. She did however receive serious injuries (including loss of her eyesight), which required several surgeries and extensive hospitalization. The witness testified that she was standing behind her car, in relation to the direction from which the gunshots were fired. She was struck from the waist up, and fell to the ground, behind the car. She did not move immediately. She heard footsteps, and then she later moved toward the highway, but a car pulled off the highway and the driver indicated that someone had already called for help.*

*5. The Court also held that use of the "send a message" argument was proper rebuttal to the defense's closing argument in which the defense attorney "asked the jury to consider '[w]hether people can say that in Leake County, Mississippi, they give the death penalty to mentally retarded people.'" Wells, 698 So. 2d at 513-14.*