595 So.2d 418 (1992)
Ruthie ESPARAZA
v.
STATE of Mississippi.
No. 89-KA-0075.
Supreme Court of Mississippi.
February 19, 1992.
*421 William T. May, Logan & May, Newton, for appellant.
Mike C. Moore, Atty. Gen., W. Glenn Watts, Sp. Asst. Atty. Gen., Jackson, for appellee.
Before ROY NOBLE LEE, C.J., and PRATHER and BANKS, JJ.
PRATHER, Justice, for the Court:

I.

INTRODUCTION
This drug possession case arose from the December 19, 1988, judgment of the Circuit Court of Newton County. The appellant, Ruthie Esparaza, timely filed notice of appeal of her convictions of possession of more than one ounce of marijuana with intent to deliver and possession of cocaine, with twelve and three-year sentences, respectively, to run consecutively. The appellant asks that this Court reverse her conviction due primarily to the state's failure to notify her of her right to a preliminary hearing. While this Court agrees with the appellant's contention that the state's failure constituted a serious neglect of a mandated duty, the error does not warrant a remedy of reversal. Finding that the appellant's other issues bear no merit, this Court AFFIRMS.

II.

ISSUES
In this appeal, the appellant, Ruthie Esparaza, raises issues which may be summarized as:
1. Did the trial court err when it denied Esparaza's motion to quash the indictment, given her four-month incarceration before indictment without opportunity for a preliminary hearing?
2. Did the trial court err when it wholly denied Esparaza's motion to compel disclosure of a confidential informant; and did the trial court err when it denied Esparaza's motion to compel disclosure of the identity of a third person "whom the state knew possessed information crucial and important to [Esparaza]"?
3. Did the trial court err when it denied Esparaza's motion to quash the jury venire, given the fact that a key state witness had contact with a member of the jury panel?
4. Did the trial court err when it denied Esparaza's motion for mistrial, given "comments of the trial judge to the jury that the jury's decision would be reviewed" by an appellate court?
5. Did the trial court err when it denied Esparaza's motion for directed verdict at the close of the state's case, her written peremptory motion, and her motion for judgment notwithstanding the verdict or for new trial?

III.

FACTS
During the week preceding May 13, 1988, according to Ruthie Esparaza, she sold two horses for "approximately six or seven hundred dollars." Esparaza stated that the buyer paid her in small bills, which she saved for the down payment on a car.
On May 13, 1988, Deputy Sheriff Knight obtained a search warrant to go to the home of Eileen McElhenney, Esparaza's mother, because of information he received from a confidential informant. Esparaza *422 lived with her mother at that time, although she claimed that she did not. Esparaza's daughter also lived with McElhenney. Knight went to McElhenney's house, accompanied by several other officers.
The search of McElhenney's home revealed a large, brown bag containing two large bags of marijuana in a bedroom closet. The bag also contained $1,560.00 in a shoe. The officers found a set of small scales in the same bedroom. In the dining area, the officers found a black purse containing two smaller bags of marijuana and some cocaine. Knight arrested everyone in the house: Esparaza, her mother, her daughter, and three males.
Knight testified that he read the three women their rights at the sheriff's office. McElhenney and Esparaza's daughter made no statements, but Esparaza said, "I will claim the dope in my purse, but I know nothing about the marijuana in the closet." Esparaza also admitted owning the shoe and the $1,560.00 in it.
The sheriff's office released the three arrested males due to insufficient evidence. The sheriff released McElhenney two days after arrest.
The state admitted that Esparaza did not receive a preliminary hearing. Deputy Sheriffs Knight and Knowlin stated that they had neither offered her a preliminary hearing, nor informed her of her right to have one, nor heard her waive one. Esparaza testified that she did not know to ask for a hearing. Knowlin admitted that standard procedure called for a hearing, and did not know why the procedure had not been followed in this case. The court found as fact that Esparaza had not been accorded a preliminary hearing and that she had not been offered one.
A grand jury indicted Esparaza on September 14, 1988; the court appointed an attorney to represent her.[1] Tolbert, Esparaza's daughter, also stayed in jail four months, until the grand jury no-billed her. Esparaza moved to quash her indictment, alleging that she had "on no occasion, actually or impliedly, knowing, intelligently, or voluntarily waived her rights to a preliminary hearing." Esparaza noted that she had been incarcerated for over four months with no opportunity for discovery and subject to a $50,000 bail. Esparaza also claimed that she had been kept in a cell-block with male inmates and in open view of male trustees and officials. The court overruled the motion to quash on December 14, 1988.
On December 19, 1988, a jury returned its judgment of guilty and the court sentenced the defendant to twelve years on the charge of possession of marijuana with intent to deliver and three years on the charge of possession of cocaine, to run consecutively. The defendant moved for a judgment notwithstanding the verdict or for a new trial on grounds that included the court's failure to sustain Esparaza's motions before and during trial. The trial court overruled the motion after which Esparaza appealed to this Court.

IV.

LAW

1. Did the trial court err when it denied Esparaza's motion to quash the indictment, given her four-month incarceration before indictment without opportunity for a preliminary hearing?
Mississippi's criminal court rule entitled "Initial Appearance" states:
Every arrested person shall be taken before a judicial officer without unnecessary delay... .
... .
The judicial officer shall inform the defendant of [her] right to a preliminary hearing, and a date for such hearing shall be set within a reasonable time. The preliminary hearing shall be heard on the set date, unless it is waived in writing or in open court and upon the *423 advice of counsel. If preliminary hearing is waived by the defendant, the judicial officer shall bind the defendant over to the next grand jury.
Miss.Unif.Crim.R. of Cir.Ct.Prac. 1.04 (1988) (emphasis supplied). The "Preliminary Hearing" rule states:
The preliminary hearing shall be heard by a judicial officer on the date set for such hearing at the defendant's initial appearance... . If from the evidence it appears that there is probable cause to believe that an offense has been committed, and that the defendant committed it, the judicial officer shall bind the defendant over to the next grand jury.
Miss.Unif.Crim.R. of Cir.Ct.Prac. 1.07 (1988). The rule mandates that a preliminary hearing be waived only in writing or open court and upon the advice of counsel. Lambert v. State, 524 So.2d 576, 581 (Miss. 1988) (Dan Lee, P.J., dissenting in part and concurring in part, and joined by four justices).
The need for a preliminary hearing cannot be dismissed simply because some level of probable cause and bond have already been established. Avery v. State, 555 So.2d 1039, 1042 (Miss. 1990). Like a grand jury considering indictment, a magistrate at an initial appearance has the authority to determine probable cause, ex parte; that determination, however, may be made under less stringent standards than those employed by a judge at a preliminary hearing in which the accused benefits from the representation of counsel. Thus, because an initial appearance employs a lower probable-cause standard than a preliminary hearing, an initial appearance cannot satisfy the accused's right to an adversarial determination of probable cause. Avery, 555 So.2d at 1042. But cf. Robinson v. State, 585 So.2d 735, 737-38 (Miss. 1991) (McRae, J., specially concurring).
If a defendant's motion for preliminary hearing is denied, the standard of review calls for a harmless error analysis; the defendant must prove that some prejudice to the defendant's case resulted from the denial. See Avery, 555 So.2d at 1043; see also Hansen v. State, 592 So.2d 114, 115 (Miss. 1991) (en banc); Willie v. State, 585 So.2d 660, 670-71 (Miss. 1991) (en banc). On its own, an "illegal ... detention does not void a subsequent conviction." Gerstein v. Pugh, 420 U.S. 103, 119, 95 S.Ct. 854, 865, 43 L.Ed.2d 54 (1975).
Would any other sort of showing of prejudice apply to the facts of this case? Turning to the speedy trial context, strong authority supports the proposition that personal prejudice, such as effect on finances, social disapproval, anxiety, and family disruption, may evince prejudice to a defendant. See Moore v. Arizona, 414 U.S. 25, 26-27, 94 S.Ct. 188, 189-90, 38 L.Ed.2d 183 (1973); Barker v. Wingo, 407 U.S. 514, 532-33, 92 S.Ct. 2182, 2193, 33 L.Ed.2d 101 (1972); United States v. Marion, 404 U.S. 307, 320, 92 S.Ct. 455, 463, 30 L.Ed.2d 468 (1971); see also Jaco v. State, 574 So.2d 625, 632-33 (Miss. 1990); Trotter v. State, 554 So.2d 313, 318 (Miss. 1989). Even in speedy trial analysis, however, anxiety as a result of incarceration does not typically, by itself, rise to the level of prejudice that warrants reversal. Williamson v. State, 512 So.2d 868, 877 (Miss. 1987). Thus, the law inevitably leads to the conclusion that an illegal detention resulting from the denial of the right to a preliminary hearing cannot justify reversal unless the defendant can prove prejudice to the merits of the defense case.

Application
The varying and sometimes lengthy intervals between our counties' terms of court demand that a detainee be accorded the right to a preliminary hearing. Our rules impose on the state an affirmative duty to notify a detainee of that right. This case demonstrates the opportunity for grievous harm when local officials fail to discharge their mandated duties. An incarcerated person may suffer significant prejudice to her personal interests while she waits for a far-off grand jury to determine probable cause.
Esparaza alleges that, under color of law, the authorities deprived her of her civil rights by failing in their affirmative *424 duty to notify her of her right to a preliminary hearing.[2] She was detained for four months without being informed of her right to a preliminary hearing. She was subject to a bail set at $50,000. She was forced to wait until the next grand jury term, months away, before she had further review of the reasons for her incarceration. Ironically, the September grand jury no-billed Esparaza's daughter, who had remained in jail for the same duration.
Esparaza contends that the failure to provide a preliminary hearing prejudiced the merits of her case. The record does not support this contention. This Court willingly acknowledges that the four-month detention subjected Esparaza to the inevitable personal prejudice attendant upon incarceration. Another kind of prejudice recognized in Barker v. Wingo applies here, too: it prejudices society as a whole that, before a court ever determines guilt, a sheriff can "forget" the key until the next grand jury term by failing to inform the accused of her valuable right to an adversarial probable cause determination.
The prejudice raised by this case, however, does not warrant the remedy requested. While the officials' denial of a preliminary hearing unlawfully restrained Esparaza's liberty under the state laws, any harm to Esparaza now bears no weight in a request for reversal; the merits of her case suffered no prejudice.

2. Did the trial court err when it wholly overruled Esparaza's motion to compel disclosure of a confidential informant; and did the trial court err when it denied Esparaza's motion to compel disclosure of the identity of a third person "whom the state knew possessed information crucial and important to [Esparaza]"?
Esparaza moved to compel disclosure of a confidential informant and a third person whom the informant allegedly witnessed making a buy. The defendant alleged that she was out-of-state when the drug transaction occurred, so that "any alleged purchase ... from the site included in the purported search warrant becomes of great relevancy and importance." The court overruled the motion.
The state need not disclose an informant's identity unless the informant will be a witness at trial or was an eyewitness to the offense, or if failure to disclose would violate a constitutional right of the defendant. Bradley v. State, 562 So.2d 1276, 1279 (Miss. 1990) (citations); Rose v. State, 556 So.2d 728, 733 (Miss. 1990); see also Miss.Unif.Crim.R. of Cir.Ct.Prac. 4.06(b)(2) (1988).
In this case, the confidential informant did not witness the offense charged and did not serve as a witness in the proceeding. The informant merely provided data that established probable case to support a search warrant. Under Mississippi law, that degree of connection with the crime charged constitutes too tenuous a link to justify disclosing the informant. The same reasoning extends in this case to the disclosure of the third party whom the informant saw make a buy. The court found that disclosing the identity of the third party would also disclose the identity of the confidential informant. The third party had no greater connection with Esparaza's case than did the informant. Neither the third party nor the confidential informant could have provided testimony crucial to Esparaza. The state did not charge her with a sale, which the informant had allegedly witnessed. Thus, the trial court's overruling of the defendant's motions to disclose the confidential informant and third party does not constitute error.

3. Did the trial court err when it denied Esparaza's motion to quash the jury venire, given the fact that a key state witness had contact with a member of the jury panel?
Due to a conversation Deputy Sheriff Knight, a witness, had with a prospective juror, the defendant filed a motion to quash the jury venire. The court ruled Knight's contact incidental and curable by voir-dire exploration. The court did not seat the prospective juror in question.
*425 The standard of review in this issue may be drawn by analogy to violations of the witness sequestration rule, see Miss. R.Evid. 615. The Court has applied a "clearly erroneous" standard to the trial court's finding of harmless error. See Lewis v. State, 580 So.2d 1279, 1286-87 (Miss. 1991) (husband of victim spoke with witnesses about their upcoming testimony).
In the substantive law on this issue, this Court has held it error not to quash the jury when a sheriff, later called as a witness, spent the night at the same hotel as the jury. Dunn v. State, 264 So.2d 823, 825-26 (Miss. 1972). In that case, the Court relied for authority on cases in which material witnesses had, conflictingly, also served as bailiffs. Id. at 825-26.
In the case at hand, the facts do not indicate the level of conflict referred to in Dunn. Deputy Sheriff Knight paused to speak with a potential juror before the attorneys began selection. The deputy would have shown better discretion by not speaking to a potential juror. On the facts of this case, however, given the short and innocuous conversation, the opportunity for voir dire of the juror, and the fact that the prospective juror did not serve, the court's failure to quash the jury venire did not constitute reversible error.

4. Did the trial court err when it denied Esparaza's motion for mistrial, given "comments of the trial judge to the jury that the jury's decision would be reviewed" by an appellate court?
During the voir-dire process, the court instructed the jury that the parties' lawyers had a duty to object, which the jurors should not view negatively. The court stated: "It's done sometimes simply to protect that matter in the record for possible review later on of any decision that I make... . You shouldn't hold that against them, because that's what we have an appellate court on down the road for." The defendant moved for a mistrial based on these comments. The court denied the motion. The defendant moved for a directed verdict at the close of the state's case and the close of the defense case; the court denied the motions.
A trial court should, of "manifest necessity," declare a mistrial if the jury has been biased or otherwise tainted. Spann v. State, 557 So.2d 530, 532 (Miss. 1990). Thus, the inquiry in this issue must consist of determining whether or not the judge tainted or biased the jury when he commented on the possibility of appellate review. A useful guide may be found in Caldwell v. Mississippi, 472 U.S. 320, 105 S.Ct. 2633, 86 L.Ed.2d 231 (1987). There, the district attorney informed a jury in a capital case that its decision was automatically reviewable and not final. Id. at 325, 105 S.Ct. at 2637, 86 L.Ed.2d 231. The United States Supreme Court held that the comments tainted the jury, since a jury might feel freer to err because of the likelihood of review. Id. at 331, 105 S.Ct. at 2641, 86 L.Ed.2d 231. The Court also found a significant danger of bias in the inaccurate suggestion to the jurors that they did not bear the ultimate decision-making responsibility. Id. at 333, 105 S.Ct. at 2641-42, 86 L.Ed.2d 231. In commenting on the inappropriateness of the prosecutor's argument, the Court pointed out that most state courts find such arguments improper in a non-capital context, as well. Id. at 334, 105 S.Ct. at 2642, 86 L.Ed.2d 231 (dictum).
Applying this reasoning to the case at hand, the judge's comment did not cause reversible prejudice. In Caldwell, the jurors heard the state's attorney, in closing argument, say that the Mississippi Supreme Court would review the sentence imposed by the jury and would make the final decision. Here, prior to opening statements, the court merely explained to the jurors that lawyers voice objections in order to preserve trial errors for possible review. The court did not tell the jurors that another body would review their decision. The court did not tell them that a higher court would make the final decision. The court, as an aside, told the jurors that review might happen. No prejudice or taint warranted a mistrial of manifest necessity.

*426 5. Did the trial court err when it denied Esparaza's motion for directed verdict at the close of the state's case, her written peremptory motion, and her motion for judgment notwithstanding the verdict or for new trial?

The defendant proposes four vehicles for dispensing with the verdict: a directed verdict, a peremptory instruction, a judgment notwithstanding the verdict, and a motion for new trial. A defendant waives the appeal of an overruled motion for directed verdict made at the end of the state's case when the defendant chooses to go forward with its case. Wetz v. State, 503 So.2d 803, 807-08 n. 3 (Miss. 1987). Review of a directed verdict made at the close of the defendant's case consists of this Court's applying a reasonable doubt standard to the verdict, while viewing the evidence in a light most favorable to the verdict. Stever v. State, 503 So.2d 227, 230 (Miss. 1987).[3] The appeal of an overruled peremptory instruction or motion for j.n.o.v. also tests the sufficiency of the evidence as a matter of law, viewing the evidence in a light favorable to the verdict. May v. State, 460 So.2d 778, 780-81 (Miss. 1984).
On the other hand, the state cannot as easily withstand a motion for new trial; there, the defendant alleges that the verdict lies against the substantial weight of the evidence. Id. Instead of discharge, as in the sufficiency challenges, the defendant asks for a new trial. Id. The Supreme Court will reverse the lower court's denial of a motion for new trial only if, by denying, the court abused its discretion. Wetz, 503 So.2d at 812; see, e.g., Crenshaw v. State, 520 So.2d 131, 135 (Miss. 1988); Leflore v. State, 535 So.2d 68, 70 (Miss. 1988); May, 460 So.2d at 781; Neal v. State, 451 So.2d 743, 760 (Miss. 1984), cert. denied, Neal v. Mississippi, 469 U.S. 1098, 105 S.Ct. 607, 83 L.Ed.2d 716 (1984). In Groseclose v. State, 440 So.2d 297, 300 (Miss. 1983), the court stated that a new trial should only be granted when "the verdict is so contrary to the overwhelming weight of the evidence that, to allow it to stand, would be to sanction an unconscionable injustice." Accord May, 460 So.2d at 781-782; Pearson v. State, 428 So.2d 1361, 1364 (Miss. 1983).
Substantively, this issue concerns evidence of possession and intent to distribute. This Court, in Curry v. State, 249 So.2d 414 (Miss. 1971), articulated Mississippi's guidelines for determining possession:
What constitutes a sufficient external relationship between the defendant and the narcotic property to complete the concept of "possession" is a question which is not susceptible of a specific rule. However, there must be sufficient facts to warrant a finding that defendant was aware of the presence and character of the particular substance and was intentionally and consciously in possession of it. It need not be actual physical possession. Constructive possession may be shown by establishing that the drug involved was subject to his dominion or control. Proximity is usually an essential element, but by itself is not adequate in the absence of other incriminating circumstances.
Curry, 249 So.2d at 416. Curry and its progeny have focused mostly on evidence of control. When drugs are found on premises, exclusive control provides significant proof of constructive possession. Keys v. State, 478 So.2d 266, 268-269 (Miss. 1985). In Pool v. State, 483 So.2d 331, 336-337 (Miss. 1986), cert. denied, Pool v. Mississippi, 476 U.S. 1160, 106 S.Ct. 2280, 90 L.Ed.2d 722 (1986), the Court applied the restriction that, where the accused did not exclusively possess the contraband, the lack of exclusive possession would entitle the accused to acquittal unless the state proved the connection between the accused and the contraband. Accord Powell v. State, 355 So.2d 1378, *427 1379 (Miss. 1978); Sisk v. State, 290 So.2d 608, 610 (Miss. 1974).
Regarding sufficiency of evidence supporting an instruction or finding of intent to sell or deliver, Mississippi law holds that the quantity and nature of contraband may be sufficient to establish an intent to distribute. Boches v. State, 506 So.2d 254, 260; Guilbeau v. State, 502 So.2d 639, 642 (Miss. 1987). The state must prove that the amount possessed exceeds a personal consumption amount. Bryant v. State, 427 So.2d 131, 132-133 (Miss. 1983) (on intent-to-deliver charge, the state failed to prove that amount exceeded amount reasonable for personal use); Coyne v. State, 484 So.2d 1018, 1022 (Miss. 1986) (police found scales and numerous bags of marijuana constituting an amount presumptively greater than for personal use); Keys, 478 So.2d at 268 (amount seized too great to be for personal use); see also Stringer v. State, 557 So.2d 796, 797-98 (Miss. 1990). Each case must be adjudged on its own facts, but whatever the facts, the mere suspicion of intent cannot support a conviction; the state must prove intent beyond a reasonable doubt. Hicks v. State, 580 So.2d 1302, (Miss. 1991); see also Hollingsworth v. State, 392 So.2d 515, 517-18 (Miss. 1981).
Viewing the evidence in a light most favorable to the state, this case presents evidence sufficient to overcome a motion for directed verdict, peremptory instruction, or j.n.o.v. The authorities discovered two large bags of marijuana in a bedroom closet in a paper bag which also contained Esparaza's shoe; the shoe contained $1,560. Esparaza acknowledged owning the shoe. The search also revealed weighing scales in the same room. Esparaza's purse contained marijuana and cocaine. Esparaza acknowledged owning the purse and at one time acknowledged owning the marijuana in the purse. Favoring the state's evidence over Esparaza's, she had been at her mother's house frequently, as evidenced by her car parked outside.
The evidence sufficiently points to Esparaza's control of the drugs; she can be connected with them by her own admissions. The quantity of drugs and accompanying paraphernalia demonstrate evidence of intent to sell. On the question of sufficiency, then, the evidence demonstrates that a juror could indeed have reached the verdict beyond a reasonable doubt. The trial court properly denied the motions for directed verdict, peremptory instruction, and j.n.o.v. It cannot be said that the substantial weight of the evidence lies against the jury's verdict. Thus, the trial court properly denied the defendant's motion for new trial.

V.

CONCLUSION
Despite the disturbing, four-month detention resulting from the state's denying the defendant a preliminary hearing, the record shows no prejudice to the outcome of the case warranting reversal. The other errors alleged by the defendant show no merit. The judge properly overruled Esparaza's motion to disclose the confidential informant and an associated third party, her motion to quash the jury venire, and her motion for mistrial based on the judge's comments to the jury.
Because, on the merits, the evidence of guilt was sufficient and not countered by evidence of substantial weight, the judge properly overruled Esparaza's motions for directed verdict, peremptory instruction, judgment notwithstanding the verdict, and motion for new trial. Thus, the decision of the trial court is affirmed.
AFFIRMED.
ROY NOBLE LEE, C.J., and PITTMAN and BANKS, JJ., concur.
McRAE, J., and HAWKINS, P.J., concur in results only by specially concurring opinion.
DAN M. LEE, P.J., and SULLIVAN and ROBERTSON, JJ., dissent by separate written opinion.
SULLIVAN, Justice, dissenting:
When an accused is taken before a judicial officer initially, the judicial officer is *428 required, under the provisions of Rule 1.04 of the Mississippi Uniform Criminal Rules of Circuit Court Practice, to inform the accused:
(1) That the defendant is not required to speak and that any statements he makes may be used against him;
(2) If the defendant is unrepresented, that he has the right to assistance of counsel, and that if he is unable to afford counsel, an attorney will be appointed to represent him;
(3) That the defendant has the right to communicate with counsel, family or friends, and that reasonable means will be provided to enable him to do so.
Additionally, "[t]he judicial officer shall inform the defendant of his right to a preliminary hearing, and a date for such hearing shall be set within a reasonable time." The accused may waive the preliminary hearing either in writing or in open court.
In the hearing on Esparaza's motions, Esparaza denied that she had ever been told that she had a right to a preliminary hearing. She said that she did not waive that right and, in fact, did not know to ask for a hearing. She said she remembers that certain rights were read to her by Deputy Jackie Knight, although she could not remember what those were.
Deputy Knight testified that, to his knowledge, Esparaza had never requested a preliminary hearing, had never refused a hearing, and had never even been advised of her right to a hearing. Deputy Woodrow Knowlin testified that he had asked Deputy Knight about a preliminary hearing for Esparaza, and Knight said that since bond had been set, he did not think a preliminary hearing was necessary. To Deputy Knowlin's knowledge, Esparaza had not been offered a hearing.
The purposes for which a preliminary hearing is held have expanded with enactment of the Uniform Criminal Rules. Whereas the preliminary hearing once functioned solely as a means of determining probable cause and setting bond, this Court has recognized that under Rules 1.04 and 1.07, the preliminary hearing now serves a number of additional purposes.
Under the Rules, the preliminary hearing is no longer comparable to a grand jury indictment. An indictment, although establishing probable cause, "is a written accusation prepared by the public prosecutor and presented before the grand jury who examines the evidence in support of it... . In finding an indictment the grand jury is similar to a trial except that it only hears one side of the case." In re Davis, 257 So.2d 884, 886 (Miss. 1972).
A preliminary hearing, on the other hand, is adversarial in nature. In Avery v. State, 555 So.2d 1039 (Miss. 1990), we examined the functions of the preliminary hearing and concluded that
... setting bond and establishing probable cause are not the only purposes of a preliminary hearing. Rule 1.07 provides that witnesses produced by the prosecution at the preliminary hearing shall be examined on oath `in the presence of the defendant.' The Rule further provides that `the defendant may cross-examine the witnesses against him.' We have recently recognized that one of the primary purposes of a preliminary hearing is `to permit the defendant to confront his accusers.' Shook v. State, 552 So.2d 841, 850 (Miss. 1989). Herring v. State, 522 So.2d 745, 751 (Miss. 1988) recognizes the point as well.
Avery, 555 So.2d at 1042.
Prior to Avery, we held that return of a grand jury indictment eliminated the need for a preliminary hearing since the indictment established probable cause. See Herring v. State, 522 So.2d 745, 751 (Miss. 1988) and Blair v. State, 445 So.2d 1373, 1374 (Miss. 1984). By virtue of our ruling in Avery, however, a grand jury indictment no longer obviates the need for a preliminary hearing. "The purposes of confrontation and discovery are hardly rendered moot once bond has been set or even when an indictment has been returned." Avery, 555 So.2d at 1042. However, we declined to hold that the denial of Avery's right to a preliminary hearing required reversal. We reached that decision only because Avery was given more opportunity for discovery and confrontation than he would have been *429 afforded at a preliminary hearing because he was retried after his first trial ended in a mistrial. Esparaza has been afforded no such opportunity.
The majority concludes that Esparaza has not suffered any prejudice as a result of not having a preliminary hearing. However, Esparaza was detained for four months and her bail was set at $50,000.00. In Gerstein v. Pugh, 420 U.S. 103, 95 S.Ct. 854, 43 L.Ed.2d 54 (1975), the United States Supreme Court said,
[A] policeman's on-the-scene assessment of probable cause provides legal justification for arresting a person suspected of crime, and for a brief period of detention to take the administrative steps incident to arrest. Once the suspect is in custody, however, the reasons that justify dispensing with the magistrate's neutral judgment evaporate. There no longer is any danger that the suspect will escape or commit further crimes while the police submit their evidence to a magistrate. And, while the State's reasons for taking summary action subside, the suspect's need for a neutral determination of probable cause increases significantly. The consequences of prolonged detention may be more serious than the interference occasioned by arrest. Pretrial confinement may imperil the suspect's job, interrupt his source of income, and impair his family relationships. See R. Goldfarb, Ransom 32-91 (1965); L. Katz, Justice Is the Crime 51-62 (1972). Even pretrial release may be accompanied by burdensome conditions that effect a significant restraint of liberty. See, e.g., 18 U.S.C. §§ 3146(a)(2), (5). When the stakes are this high, the detached judgment of a neutral magistrate is essential if the Fourth Amendment is to furnish meaningful protection from unfounded interference with liberty. Accordingly, we hold that the Fourth Amendment requires a judicial determination of probable cause as a prerequisite to extended restraint of liberty following arrest. (Emphasis added).
Gerstein, 420 U.S. at 113-114, 95 S.Ct. at 863, 43 L.Ed.2d at 65.
Under our Rules, the probable cause determination is not made at the initial appearance but is made at the preliminary hearing. Esparaza went four months without a probable cause determination. Her bail was set at $50,000.00. I would hold that this combination of factors resulted in an extended restraint of Esparaza's liberty requiring a determination of probable cause.
A probable cause determination must be made by an impartial judicial officer. The Supreme Court emphasized this point in Gerstein when it held that "[a]lthough a conscientious decision that the evidence warrants prosecution affords a measure of protection against unfounded detention, we do not think prosecutorial judgment standing alone meets the requirements of the Fourth Amendment." Gerstein, 420 U.S. at 117, 95 S.Ct. at 864, 43 L.Ed.2d at 67. A deputy's decision that a preliminary hearing is not needed is not sufficient grounds to dispense with the probable cause determination.
Moreover, failure to provide Esparaza with a preliminary hearing was aggravated by the failure to inform Esparaza that she even had a right to a preliminary hearing. The majority terms this a "serious failure of a mandated duty." Black's Law Dictionary defines mandatory as "containing a command; preceptive; imperative; peremptory; obligatory" and a mandatory statute as one which is "characterized by such directives as `shall' and not `may.'" Black's Law Dictionary 962 (6th ed. 1990). Under Rule 1.04, the duty of the judicial officer to inform the accused of his or her right to a preliminary hearing is clearly mandatory. Failure to follow the Rule's precepts is more than "serious neglect"; it is reversible error. I respectfully dissent from the majority's conclusion that "any harm to Esparaza now bears no weight in a request for reversal."
DAN M. LEE, P.J., and ROBERTSON, J., join this dissent.
McRAE, Justice, specially concurring:
I join in the results only because I think the majority opinion is sidestepping the issue *430 of a preliminary hearing after indictment. The decision in Avery v. State, 555 So.2d 1039 (Miss. 1990), while allowing a preliminary hearing after a person has been indicted, should be overruled in that the rules do not provide for such a vehicle. Only prior to an indictment is the defendant entitled to a preliminary hearing. See Uniform Criminal Rules of Circuit Court Rule 1.04 which stipulates that an arrested person shall be taken before a judicial officer, who shall inform the defendant of his right to a preliminary hearing and, at that time, a preliminary hearing may be set. See also Uniform Criminal Rules of Circuit Court Rule 1.07 which provides for the preliminary hearing to be held before a judicial officer and sets out the procedure for such hearing. Nowhere in either of these two rules is a preliminary hearing allowed after an indictment. Robinson v. State, 585 So.2d 735 (Miss. 1991) (McRae, J., Specially Concurring).
HAWKINS, P.J., joins this opinion.
NOTES
[1] Newton County circuit court terms in 1988 began March 21 running for 18 days and August 15 for 18 days. A term beginning December 5 for 12 days was devoted to civil business. See Miss. Code Ann. § 9-7-27 (1972) (1988 supplement revealed no changes in the 1972 term of court designation).
[2] See 42 U.S.C. § 1983.
[3] In the case at hand, the Defendant erroneously appealed the court's overruling of the defense motion for directed verdict at the close of the State's case. The Defendant cannot do this, since she went forward with her own case. She could have, however, appealed the court's overruling of her motion for directed verdict at the close of her own case; for the sake of analysis, we will assume that she did so.