906 So.2d 133 (2004)
Anthony RATLIFF, Appellant,
v.
STATE of Mississippi, Appellee.
No. 2002-KA-01575-COA.
Court of Appeals of Mississippi.
December 7, 2004.
Rehearing Denied March 22, 2005.
Certiorari Denied June 30, 2005.
*135 Thomas M. Fortner, Lynn Watkins, Jackson, attorneys for appellant.
Office of the Attorney General by Jean Smith Vaughan, attorney for appellee.
Before KING, C.J., IRVING and MYERS, JJ.
IRVING, J., for the Court.
¶ 1. Anthony Ratliff was convicted by a Hinds County jury of two counts of sexual battery of a child. He was sentenced to twenty-five years on each count, to be served concurrently in the custody of the Mississippi Department of Corrections. Aggrieved by the jury's verdict, Ratliff argues in this appeal that the trial court erred in permitting the testimony of various witnesses and in denying his motions for a JNOV and a new trial. Additionally, Ratliff argues that he received ineffective assistance of counsel and that the cumulative errors committed during the course of the trial violated his right to a fair trial.
¶ 2. We reject each of the contentions made by Ratliff and affirm his conviction and sentence.

FACTS
¶ 3. At the time of the incident, Anthony Ratliff was a school security officer at Rowan Middle School, and Lisa was a thirteen-year-old sixth grade student at the school.[1] Lisa testified that she and Ratliff met at the beginning of the school year while she was a participant in an after-school program. Lisa further testified that she developed a crush on Ratliff, and the two soon began communicating by letters and by telephone. Ratliff wrote the child a number of letters expressing his desire to be with her in a sexual manner. He also frequently called her house from a pay telephone. Lisa testified that during school hours, Ratliff instructed her to go with him behind the curtains in the school's auditorium where he kissed and *136 groped her. Lisa further testified that Ratliff told her that he loved her and to not tell anyone about their relationship because it would ruin his career.
¶ 4. On February 16, 2001, following a Friday night Valentine's Day dance sponsored by the school, Ratliff took Lisa to a local motel and engaged in anal and oral sex with her. When Lisa did not report to school on the following Monday, Ratliff called Lisa's house to see why she was not at school. He also went by the child's house to see her while her grandmother was at work.[2] Ratliff called Lisa's house again later that evening from a telephone in the teacher's lounge. Lisa's mother became suspicious when she answered the call and heard an older male's voice.[3] The next day at school, Lisa gave her teacher the letters which Lisa had received from Ratliff and informed school officials and her mother of her relationship with Ratliff. Shortly thereafter, Ratliff was terminated from employment. Additional facts will be related during our discussion of the issues.

ANALYSIS AND DISCUSSION OF THE ISSUES

(1) Hearsay Evidence
¶ 5. In his first seven assignments of error, Ratliff challenges the testimony of several witnesses presented on behalf of the State during trial. He argues that the trial court erred in admitting the testimony of the following witnesses: Sandy Langston, the emergency room nurse who attended Lisa; Kelly Hinson, a social worker who interviewed Lisa at the hospital's emergency room; Betty Kennedy, a teacher at Lisa's school; Clyde Speaks, the school's principal; Connie Priest, the school's office manager; Jane Smith, the victim's mother; and Glen Davis, Jackson Public School's security coordinator. Ratliff argues that the witnesses' testimony constituted inadmissible hearsay with no applicable exceptions, or was either irrelevant or prejudicial. Ratliff further points out several instances in which his trial counsel failed to object to the testimony of a number of the witnesses and argues that because his constitutional rights were substantially prejudiced, this Court should apply the doctrine of plain error.
¶ 6. We note from the outset that the record is clear and the State properly advances that Ratliff failed to object to the testimony of witnesses Kelly Hinson, Connie Priest, and Jane Smith. The State asserts that these issues are procedurally barred as having been waived by Ratliff's failure to object to the witnesses' testimony at trial.
¶ 7. "This Court has held that a party who fails to make a contemporaneous objection at trial must rely on plain error to raise the issue on appeal, because it is otherwise procedurally barred." Williams v. State, 794 So.2d 181, 187(¶ 23) (Miss.2001) (citing Foster v. State, 639 So.2d 1263, 1288-89 (Miss.1994)). "The plain error doctrine requires that there be an error and that the error must have resulted in a manifest miscarriage of justice." Williams, 794 So.2d at 187(¶ 23) (citing Gray v. State, 549 So.2d 1316, 1321 (Miss.1989)). "Further, this Court applies the plain error rule only when it affects a defendant's substantive/fundamental rights." Williams, 794 So.2d at 187(¶ 23) (citing Grubb v. State, 584 So.2d 786, 789 (Miss.1991)).
¶ 8. We need not decide whether it was error to admit the testimony of Hinson, Priest and Smith, for after a thorough *137 review of the record, we fail to see how the admission of their testimony resulted in a manifest miscarriage of justice. Here, Lisa's testimony alone precludes a determination that Ratliff's conviction was based substantially on the testimony of Hinson, Priest and Smith. Therefore, there was no miscarriage of justice, making consideration of this issue under the plain error doctrine to be inappropriate. As a result, we find this issue to be procedurally barred. Having determined that Ratliff's failure to object to witnesses Hinson's, Priest's, and Smith's testimony at trial constitutes a procedural bar, we now address his remaining hearsay allegations.

A. Sandy Langston's Testimony
¶ 9. Ratliff contends that the trial court erred in allowing the testimony of Sandy Langston, an emergency room nurse at the Mississippi Baptist Medical Center, who testified that she cared for Lisa when she was brought in by her mother. He argues that Langston's testimony was inadmissable under Mississippi Rules Evidence 803(4), which provides an exception for statements made for purposes of medical diagnosis or treatment. The State, however, maintains that Langston's testimony was properly admitted under Rule 803(4).
¶ 10. During trial, the following exchange occurred between Langston and the prosecutor:
Q: And were you informed of the reason why she was there to receive treatment?
A: Yes, ma'am.
Q: Okay. And what did she tell you?
A: I was informed from the nurse who checked her in that I had a new patient in a room with an alleged sexual assault.
Q: Okay.
A: And I went in to interview the patient. Do you want me to tell you essentially my initial conversation?
Q: Yeah. Did she tell you what happened?
A: She
BY MR. BARNETT: We object, your Honor, to what the patient may have told her.
BY MS. PURNELL: Your honor, this comes in under the medical exception hearsay, 803(4).
The trial judge overruled the objection, and Langston then testified as to what Lisa told her concerning what happened between Lisa and Ratliff on the night of the incident.
¶ 11. Ratliff now argues on appeal that Langston's testimony failed to reflect that Lisa's statements to her were made for the purpose of promoting Lisa's treatment. However, as the quoted colloquy shows, Ratliff never objected to Langston's testimony on that basis. Ratliff simply objected to "what the patient may have told her." The law is well settled in this state that an objecting party is obligated to articulate the specific basis for the objection being made. Seeling v. State, 844 So.2d 439, 445(¶ 17) (Miss.2003). Further, "`[t]he assertion on appeal of grounds for an objection which were not the assertion at trial is not an issue properly preserved on appeal.'" Smith v. State, 724 So.2d 280, 319 (¶ 155) (Miss.1998) (quoting Haddox v. State, 636 So.2d 1229, 1240 (Miss.1994)). Therefore, we find that Ratliff's argument on this issue is procedurally barred.

B. Betty Kennedy's Testimony
¶ 12. Ratliff next argues that the trial court erred in admitting the testimony of teacher Betty Kennedy. In his brief, Ratliff highlights several instances in which he argues the trial court committed error. *138 First, Ratliff, in what he calls the "auditorium incident," argues that the trial court erred in allowing Kennedy to testify that she observed Ratliff and Lisa exiting the unoccupied auditorium and erred in allowing Kennedy's testimony that the auditorium's curtains were kept open because the students occasionally engaged in sexual activity behind the curtains.
¶ 13. Second, Ratliff alleges that the trial court erroneously admitted Kennedy's testimony that she overheard a conversation between the school's office manager and Lisa's mother when the child's mother called the school in an effort to determine the identity of the older male that had called Lisa's grandmother's house from the school. We note that the record reveals no objection to Kennedy's testimony concerning the auditorium or telephone incident. Notwithstanding Ratliff's failure to object, again this Court finds no infringement on Ratliff's constitutional rights, and therefore, declines to consider this matter as plain error. Thus, these arguments are procedurally barred.
¶ 14. Third, Ratliff alleges that Kennedy's characterization of letters Ratliff wrote to Lisa as "sexually graphic" was irrelevant to the charge at issue and was so prejudicial and inflammatory as to deny him a fundamental right to a fair trial. Ratliff also alleges that Kennedy's testimony was invasive of the province of the jury, and there was no way to discern from the record whether the letters described by Kennedy in her testimony were among those submitted to the jury.[4] At trial, Kennedy testified that Lisa gave her a folder containing the letters. Thereafter, the following exchange occurred:
Q: Ms. Kennedy, what bothered you, or what was so alarming about those letters that you needed to take them to Mr. Speaks?
BY MR. BARNETT: We object to that, if the Court please. The letters are the best evidence and they speak for themselves.
BY THE COURT: Sustained as to the form of the question.
BY MS. ROBINSON: (Continuing)
Q: Did you read the letters?
A: Yes.
Q: Do you recall what the letters said, some of them that you read?
A: Yes. On one particular letter he
BY MR. BARNETT: Excuse me. We're going to object, your Honor. I hate to keep objecting. We object again because the letters speak for themselves.
BY THE COURT: Well, overruled. She can explain why she did what she did after reading the letters.
¶ 15. As reflected in the quoted passage, Ratliff's counsel objected at trial to Kennedy's testimony about the letters on the basis of the best evidence rule. Now, on appeal, he argues that Kennedy should not be allowed to characterize the letters as "sexually graphic."[5] Since he never made this argument to the trial court, we find that this issue was not preserved for appellate review. Smith v. State, 724 So.2d at 319 (¶ 155).
¶ 16. Fourth, Ratliff argues that Kennedy's testimony concerning disciplinary actions taken against him was irrelevant and prejudicial and also impacted his substantial right of due process of law. *139 The record reveals that Kennedy testified without an objection from Ratliff that after Lisa gave her the letters, she gave them to the school principal. She further testified that Mr. Speaks had a conference with Ratliff and thereafter, made a decision to call the head of JPS security. The State then asked Kennedy whether she knew if Ratliff was fired because of the letters. According to the record, Kennedy never had a chance to answer the State's question because Ratliff immediately objected to the question on the basis that it was irrelevant and immaterial. The trial judge sustained the objection as hearsay.
¶ 17. While Ratliff argues that Kennedy's testimony on this point was irrelevant, immaterial and prejudicial, he fails to explain how that is the case. Since the objection was sustained, we fail to see how Ratliff suffered any harm. Therefore, even if the questions were irrelevant and immaterial, none of Ratliff's fundamental rights were violated by the allowance of the testimony up to the point of the objection.
¶ 18. Finally, Ratliff challenges Kennedy's testimony on cross-examination that one of Lisa's friends had informed Kennedy concerning the events of the night of the dance and that she wanted to see Lisa to ask her about it. The record reveals that Kennedy's testimony was in response to a question asked by Ratliff's counsel on cross-examination; therefore, Ratliff cannot now complain about an answer his counsel solicited from the witness. Walls v. State, 672 So.2d 1227, 1232 (Miss. 1996) (quoting Fleming v. State, 604 So.2d 280, 289 (Miss.1992)).

C. Clyde Speaks's Testimony
¶ 19. In this assignment of error, Ratliff challenges the school principal's testimony that he learned from the office manager that Lisa's mother had contacted the school in an attempt to ascertain the identity of the older male who had called her home. The following exchange occurred between Mr. Speaks and the prosecutor:
Q: Mr. Speaks, was there any other incident the following week on the 19th that you found out about?
A: Yes. On February 19th it was brought to my attention by my office manager, Ms. Priest, that Lisa's mother contacted the school and asked did we have a student at Rowan by the name of Tony Stevenson. The mother stated that according to her caller ID box the
BY MR. BARNETT: We're going to object to this, if the Court please, as hearsay.
BY THE COURT: Overruled.
¶ 20. Ratliff also argues that it was inadmissable hearsay for Mr. Speaks to testify that Lisa felt that it was Ratliff who had called her house on the Monday afternoon following the dance since the child never spoke with the caller.
¶ 21. Mississippi Rules of Evidence 801(c) defines hearsay as "a statement, other than one made by the declarant while testifying at the trial or hearing, offered in evidence to prove the truth of the matter asserted." Here, Speaks's statements were not offered to prove the truth of the matter, that Ratliff had actually called Lisa's house, but were offered to explain Speaks's actions during the course of his investigation of the incident. Therefore, Ratliff's argument is without merit.
¶ 22. Finally, Ratliff challenges Speaks's testimony characterizing the letters given to Lisa as "love letters." Ratliff admits that he did not object during trial but asks this Court to take notice under the plain error doctrine. In this Court's opinion, Ratliff suffered no harm as a result *140 of Speak's characterization of the letters as love letters. Therefore, there is no basis for our consideration of this issue under the plain error doctrine.

D. Glen Davis's Testimony
¶ 23. In his final allegation of error pertaining to the hearsay issue, Ratliff challenges Jackson Public School's security coordinator Glen Davis's testimony that Lisa stated that she felt that Ratliff telephoned her home. Ratliff claims that Davis's testimony was error because neither the location nor caller was ever identified conclusively since Lisa never spoke with the caller on the phone. Ratliff further alleges that the telephone call was immaterial and irrelevant. Ratliff admits that he failed to raise a contemporaneous objection but argues that Davis's testimony rises to a level of plain error affecting his constitutional right to a fair trial.
¶ 24. Ratliff also contends that it was highly prejudicial for Davis, after reading some of the letters written by Ratliff, to conclude that Ratliff had engaged in misconduct. He argues that although the trial judge sustained his objection, the damage is clear, and, therefore, this Court should find plain error and prejudice to his fundamental right to a fair trial that would warrant a reversal of his conviction.
¶ 25. Again, considering the overwhelming evidence against Ratliff, we find no miscarriage of justice, nor an infringement on Ratliff's fundamental rights. Assuming without deciding that Davis gave some testimony that was inappropriate, we find no error that would warrant a reversal of Ratliff's conviction.

(2) Fair & Impartial Trial
¶ 26. Ratliff next argues that he was denied his constitutional right to a fair trial. He contends that the State repeatedly asked witnesses improper questions in an effort to elicit irrelevant and highly prejudicial testimony.
¶ 27. As already noted in the earlier portion of this opinion, Ratliff failed to object to the testimony of several of the witnesses. Therefore, he cannot now complain on appeal. However, notwithstanding his failure to object, this Court has repeatedly held that "a criminal defendant is not entitled to a perfect trial, only a fair trial." McGilberry v. State, 843 So.2d 21, 33(¶ 30) (Miss.2003) (citing Sand v. State, 467 So.2d 907, 911 (Miss.1985)). A review of the record reveals that although Ratliff may not have received a perfect trial, he did receive a fair trial. Thus, his argument on this issue is without merit.

(3) Sufficiency and Weight of the Evidence
¶ 28. Ratliff argues that the trial court erred in denying his motions for a JNOV and a new trial. Although Ratliff raised the issues separately in his brief, we will discuss them together for the sake of brevity.
¶ 29. A motion for a JNOV challenges the legal sufficiency of the evidence. McClain v. State, 625 So.2d 774, 778 (Miss.1993). "In appeals from an overruled motion for JNOV the sufficiency of the evidence as a matter of law is viewed and tested in a light most favorable to the State." Id. (citing Esparaza v. State, 595 So.2d 418, 426 (Miss.1992)). "We are authorized to reverse only where, with respect to one or more of the elements of the offense charged, the evidence so considered is such that reasonable and fair-minded jurors could only find the accused not guilty." Id. (citing Wetz v. State, 503 So.2d 803, 808 (Miss.1987)).
¶ 30. Here, ample evidence was offered by the State in support of Ratliff's conviction. The victim testified in great *141 detail about her sexual encounter with Ratliff. The evidence presented to the jury included not only the testimony of the victim, but the testimony of several witnesses who corroborated the victim's testimony. Further, the detective in charge of investigating the crime substantiated Lisa's allegations by validating her description of the motel room where Ratliff took her. The State also entered into evidence several letters written by Ratliff expressing his desire to be with the child in a sexual manner, and Ratliff even admitted writing the letters.
¶ 31. As a result, we find that substantial evidence exists in the record to support Ratliff's conviction. Accepting the evidence in the light most favorable to the State, the jury was justified in finding Ratliff guilty. We will now address Ratliff's assignment of error that the verdict was against the overwhelming weight of the evidence.
¶ 32. As distinguished from a motion for a directed verdict or a JNOV, a motion for a new trial asks that the judgment be vacated on grounds related to the weight of the evidence, not sufficiency of the evidence. Smith v. State, 802 So.2d 82, 85-86 (¶ 11) (Miss.2001). Our standard of review for claims that a conviction is against the overwhelming weight of the evidence or that the trial court erred in not granting a motion for a new trial has been stated as follows:
[This Court] must "accept as true the evidence which supports the verdict and will reverse only when convinced that the circuit court has abused its discretion in failing to grant a new trial." A new trial will not be ordered unless the verdict is so contrary to the overwhelming weight of the evidence that to allow it to stand would sanction an "unconscionable injustice."
Todd v. State, 806 So.2d 1086, 1090(¶ 11) (Miss.2001) (quoting Crawford v. State, 754 So.2d 1211, 1222 (Miss.2000)).
¶ 33. Considering the evidence presented by the State in support of Ratliff's conviction, and its substantial weight against him, we are not persuaded that the verdict is so contrary to the overwhelming weight of the evidence that allowing it to stand would sanction an unconscionable injustice. Consequently, we find the trial court did not abuse its discretion in denying Ratliff's motion for a new trial.

(4) Ineffective Assistance of Counsel
¶ 34. Ratliff contends that he received ineffective assistance of counsel at trial. He specifically contends that his trial attorney failed to conduct discovery and, on numerous occasions, failed to object to the admission of hearsay or irrelevant testimony.
¶ 35. To establish an ineffective assistance of counsel claim, Ratliff must show a deficiency in counsel's performance that is sufficient to constitute prejudice to his defense. Strickland v. Washington, 466 U.S. 668, 687, 104 S.Ct. 2052, 80 L.Ed.2d 674 (1984). We find that Ratliff has failed to satisfy the Strickland test. Even if trial counsel's performance could be considered deficient in failing to conduct discovery or objecting to the testimony of certain witnesses, Ratliff has not proven the requisite prejudice to support an ineffective assistance of counsel claim.
¶ 36. Mississippi "recognizes a strong but rebuttable presumption that counsel's conduct falls within a broad range of reasonable professional assistance." McQuarter v. State, 574 So.2d 685, 687 (Miss.1990) (citing Gilliard v. State, 462 So.2d 710, 714 (Miss.1985)). To overcome this presumption, the defendant "must show that there is a `reasonable probability that, but for counsel's unprofessional errors, *142 the result of the proceedings would have been different.'" Handley v. State, 574 So.2d 671, 683 (Miss.1990) (quoting Strickland, 466 U.S. at 694, 104 S.Ct. at 2068). In addition to the presumption that counsel's conduct is reasonably professional, there is a presumption that counsel's decisions are strategic in nature. Leatherwood v. State, 473 So.2d 964, 969 (Miss. 1985) (citing Murray v. Maggio, 736 F.2d 279, 282 (5th Cir.1984)). In sum, "counsel's choice of whether or not to file certain motions, call witnesses, ask certain questions, or make certain objections fall within the ambit of trial strategy." Cole v. State, 666 So.2d 767, 777 (Miss.1995) (citing Murray v. Maggio, 736 F.2d 279 (5th Cir. 1984)). Ratliff has failed to demonstrate the likelihood of a different outcome had counsel performed in a different manner; therefore, Ratliff's argument on this issue fails.

(5) Cumulative Effect of Errors
¶ 37. Ratliff finally argues that the cumulative errors in this case require reversal. He claims that these errors were so prejudicial and inflammatory that they infringed upon his fundamental right to a fair trial.
¶ 38. "The question under the cumulative error rule is whether the defendant has been denied his substantial right to a fair trial." Wiley v. State, 750 So.2d 1193, 1211(¶ 71) (Miss.1999) (citing Hansen v. State, 592 So.2d 114, 142 (Miss.1991)). ("[Our supreme [c]]ourt has said many times that a defendant is not entitled to a perfect trial, only to a fair trial." Wiley, 750 So.2d at 1211(¶ 71) (citing Walker v. State, 671 So.2d 581, 629-30 (Miss.1995)).)
¶ 39. A thorough review of the record yields no reversible error with respect to each individual issue assigned. If there is no reversible error in any part, then there will be no reversible error to the whole. Wiley, 750 So.2d at 1211(¶ 72) (citing McFee v. State, 511 So.2d 130, 136 (Miss.1987)). For the forgoing reasons, we find that Ratliff was afforded a fundamentally fair and impartial trial, and thus this issue lacks merit.
¶ 40. THE JUDGMENT OF THE HINDS COUNTY CIRCUIT COURT OF CONVICTION OF TWO COUNTS OF SEXUAL BATTERY AND SENTENCE OF TWO CONCURRENT SENTENCES OF TWENTY-FIVE YEARS IN THE CUSTODY OF THE MISSISSIPPI DEPARTMENT OF CORRECTIONS, IS AFFIRMED. ALL COSTS OF THIS APPEAL ARE ASSESSED TO HINDS COUNTY.
KING, C.J., BRIDGES AND LEE, P.JJ., MYERS, CHANDLER, GRIFFIS, BARNES AND ISHEE, JJ., CONCUR.
NOTES
[1] The victim's and her mother's names have been changed to protect their privacy.
[2] Lisa lived with her grandmother while she attended Rowan.
[3] Although Lisa lived with her grandmother her mother visited her often.
[4] Although testimony revealed that Ratliff wrote Lisa twenty-five letters, the State only entered six of the letters into evidence.
[5] Kennedy testified that the letters were "pretty graphic" and not "sexually graphic" as Ratliff alleges.