# IN THE SUPREME COURT OF MISSISSIPPI

## NO. 2007-CP-01193-SCT

*ROCHESTER EUGENE PRESLEY a/k/a RONALD STARKS a/k/a ZEE ZEE ZELAZURRA a/k/a ZEE ZEE ZELA ZURO*

*v.*

*STATE OF MISSISSIPPI*

| | |
|---|---|
| DATE OF JUDGMENT: | 06/21/2007 |
| TRIAL JUDGE: | HON. ROBERT B. HELFRICH |
| COURT FROM WHICH APPEALED: | FORREST COUNTY CIRCUIT COURT |
| ATTORNEY FOR APPELLANT: | ROCHESTER EUGENE PRESLEY (PRO SE) |
| ATTORNEY FOR APPELLEE: | OFFICE OF THE ATTORNEY GENERAL BY: BILLY L. GORE |
| DISTRICT ATTORNEY: | JON MARK WEATHERS |
| NATURE OF THE CASE: | CIVIL - POST CONVICTION RELIEF |
| DISPOSITION: | AFFIRMED - 11/18/2010 |
| MOTION FOR REHEARING FILED: | |
| MANDATE ISSUED: | |

**BEFORE GRAVES, P.J., DICKINSON AND CHANDLER, JJ.**

**GRAVES, PRESIDING JUSTICE, FOR THE COURT:**

¶1.　On November 12, 2004, Rochester Presley pleaded guilty to grand larceny. The Circuit Court of Forrest County, Mississippi, Judge Robert B. Helfrich presiding, sentenced Presley to ten years in the custody of the Mississippi Department of Corrections (MDOC) with all ten years suspended upon Presley's good behavior and compliance with the conditions of probation. On June 2, 2005, the trial court held a probation-revocation hearing

and found that Presley had violated the terms and conditions of his probation, and sentenced Presley to serve the remainder of his sentence in the custody of MDOC. Presley now appeals.

## FACTS AND PROCEEDINGS BELOW

¶2. On November 12, 2004, Presley pleaded guilty to grand larceny and was sentenced to serve ten years in the custody of MDOC with all ten years suspended for good behavior and compliance with the conditions of probation. Specifically, as a condition of Presley's probation, he was not to commit any offenses against the laws of this state or any other state. After being released on probation, Presley was accompanied by Derrick Minor, an investigator for the Office of the Public Defender, to the Greyhound Bus Station. While Minor knew Presley had a bus ticket, he did not wait around to see Presley get on the bus.

¶3. Only hours after being released on probation, Presley broke into Grayco Systems in Hattiesburg, Mississippi, taking, among other things, keys to a 1995 Ford F-150 pickup truck and the F-150 truck itself. Although some details are not clear from the record, Presley drove the stolen truck to Orangeburg County, South Carolina, where the truck was found.

¶4. Upon discovering the truck, Officer Richard Murphy of the Orangeburg Sheriff's Department found Presley approximately 300 yards away from the truck. Presley told Officer Murphy that the truck was his uncle's. After checking the vehicle identification number, Officer Murphy discovered that the truck was stolen. Officer Murphy then placed Presley under arrest. While patting Presley down, officers found the set of keys to the truck in Presley's pocket. Presley subsequently was tried and convicted of commercial burglary and grand larceny.

2

¶5. On May 24, 2005, the district attorney filed a petition for revocation, alleging that Presley had violated the terms of his suspended sentence by committing commercial burglary and grand larceny.[1] That same day, Presley was served with a notice of hearing on the petition for revocation. On June 2, 2005, a hearing was held in the Circuit Court of Forrest County, Judge Robert B. Helfrich presiding.

¶6. At the hearing, Detective Rusty Keyes of the Hattiesburg Police Department testified that Presley was arrested in Orangeburg, South Carolina, for possession of the stolen truck. Det. Keyes stated that, based on his investigation, he had concluded that Presley had stolen the truck. This conclusion was based on the fact that Presley was discovered within approximately 300 yards of the vehicle and had the keys in his pocket. In addition, computer wires belonging to computers that were stolen from Grayco were found in the stolen truck. Upon cross-examination of Det. Keyes, Presley pointed out that Det. Keyes did not personally discover the truck keys on Presley. However, Det. Keyes stated that he was the supervising detective for the Hattiesburg Police Department and that the Orangeburg Sheriff's Office had reported to him that it had found the keys to the truck on Presley. Furthermore, Presley was given the opportunity to make closing remarks regarding the incident in South Carolina. At all times Presley denied involvement in stealing the truck from Grayco Systems and driving it to South Carolina.

---

[1] On September 13, 2005, Presley was indicted for commercial burglary of Grayco Systems and grand larceny for stealing the F-150 truck. On April 4, 2006, Presley was found guilty by a jury for the charges of burglary of Grayco Systems and grand larceny for the truck. On March 18, 2008, the Mississippi Court of Appeals affirmed the jury's verdict. *Presley v. State*, 994 So. 2d 191 (Miss. Ct. App. 2008).

¶7. Notwithstanding Presley's claim, the trial court found that Presley was in violation of the terms and conditions of his probation, thereby revoking his probation, and sentencing Presley to the remainder of the ten-year sentence. Thereafter, Presley filed his motion for post-conviction relief. On June 22, 2007, the trial court entered its Opinion and Order denying Presley's motion. Presley now appeals the trial court's judgment.

**ANALYSIS**

¶8. On appeal, Presley contends that he was denied due process when he was not provided a preliminary hearing for the purpose of determining whether probable cause existed to believe that he had violated a condition of his probation as required by the Supreme Court of the United States in *Gagnon v. Scarpelli*, 411 U.S. 778, 92 S. Ct. 1756, 36 L. Ed. 2d 656 (1973) (citing *Morrissey v. Brewer*, 408 U.S. 471, 92 S. Ct. 2593, 33 L. Ed. 2d 484 (1972)).

¶9. At the outset, we note that our Court of Appeals, in *Hubbard v. State*, 919 So. 2d 1022, 1027 (Miss. Ct. App. 2005), held that a defendant is procedurally barred from arguing that he was denied the right to a preliminary hearing where the defendant failed to raise the issue at his formal revocation hearing. It is clear from the record that Presley failed to raise the issue that he was denied the right to a preliminary hearing at his formal revocation hearing. Therefore, we find that Presley is procedurally barred from raising this issue on appeal.

¶10. Notwithstanding the procedural bar, Presley's claim is without merit. "When reviewing a lower court's decision to deny a petition for post-conviction relief this Court will not disturb the trial court's factual findings unless they are found to be clearly erroneous. However, when questions of law are raised the applicable standard of review is de novo."

4

*Brown v. State*, 731 So. 2d 595, 598 (Miss. 1999) (citing *Bank of Miss. v. S. Mem'l Park, Inc.*, 677 So. 2d 186, 191 (Miss. 1996)).

¶11. When facing a revocation of probation, a probationer is entitled to a preliminary hearing and a final revocation hearing. *Riely v. State*, 562 So. 2d 1206, 1210 (Miss. 1990) (citing *Gagnon*, 411 U.S. at 786). The purpose of a preliminary revocation hearing is to determine that reasonable grounds exist for revocation by someone not directly involved in the case and to determine if probable cause exists to believe that a violation has been committed. *Berdin v. State*, 648 So. 2d 73, 76 (Miss. 1994). Further, the minimum due-process requirements for a final revocation hearing include:

> (a) written notice of the claimed violations of [probation or] parole; (b) disclosure to the [probationer or] parolee of evidence against him; (c) opportunity to be heard in person and to present witnesses and documentary evidence; (d) the right to confront and cross-examine adverse witnesses [unless the hearing officer specifically finds good cause for not allowing confrontation]; (e) a 'neutral and detached' hearing body such as a parole board, members of which need not be judicial officers or lawyers; and (f) a written statement by the factfinder as to the evidence relied on and reasons for revoking [probation or] parole.

*Gagnon*, 411 U.S. at 786 (quoting *Morrissey*, 408 U.S. at 489).

¶12. Presley argued that he never received notice of a preliminary hearing, thereby preventing him from being able to call witnesses and present evidence on his behalf. He further alleged that he never received a preliminary hearing. This Court finds that, although Presley did not receive a "preliminary hearing," Presley was afforded all the necessary due-process safeguards required for the decision of whether probable cause existed to revoke his probation as required by *Gagnon*.

¶13.	This Court further finds that this case is similar to *Rusche v. State*, 813 So. 2d 787 (Miss. Ct. App. 2002), and that the same reasoning should be applied. In *Rusche*, the defendant complained that he did not receive due process as required by *Morrissey* and *Gagnon* because he was not given both a preliminary probable-cause hearing and a more formal final hearing. *Rusche*, 813 So. 2d at 789-790. Essentially, Rusche argued that he was given only one hearing and that he was constitutionally entitled to another hearing before his probation could be revoked. However, the Court of Appeals likened Rusche's situation with that of a suspect who is arrested and confined. The Court of Appeals reasoned:

> Under procedural rules arising out of due process considerations, that suspect is entitled to a preliminary hearing to determine probable cause to continue his confinement shortly after his arrest. URCCC 6.03; *Johnson v. State*, 749 So. 2d 306, 308 (Miss. Ct. App. 1999). If such a hearing is not conducted and the suspect is subsequently tried, convicted, and sentenced, then the failure to grant a preliminary hearing, though clearly erroneous, is, nevertheless, subjected to harmless error analysis. *Esparanza v. State*, 595 So. 2d 418, 423 (Miss. 1992). The rationale behind that ruling lies in the fact that an illegal detention, of itself, does not act to vitiate a subsequent conviction. *Gerstein v. Pugh*, 420 U.S. 103, 119, 95 S. Ct. 854, 43 L. Ed. 2d 54 (1975).

> We can determine no appropriate reason to apply a different line of reasoning to the matter now before us. Under harmless error analysis, the failure to provide Rusche with an immediate informal 'probable cause' hearing shortly after the State began proceedings to revoke his probation will not be seen to render ineffective the subsequent formal proceeding at which Rusche was afforded all the due process protections required under *Morrissey* unless there is some showing of prejudice to Rusche arising out of the failure to conduct the hearing – that prejudice necessarily extending beyond the issue of the State's right to continue his confinement in the interim.

*Rusche*, 813 So. 2d at 790.

¶14.	In this case, although a preliminary hearing was not conducted, Presley was given a full hearing on the issue of revocation of probation. Thus, the failure to grant such a

preliminary hearing, though clearly erroneous, should, nevertheless, be subjected to harmless-error analysis. *Rusche*, 813 So. 2d 790 (citing *Esparanza v. State*, 595 So. 2d 418, 423 (Miss. 1992)).

¶15.    Under harmless-error analysis, we find the failure to provide Presley with a preliminary probable-cause hearing did not render ineffective the formal proceeding at which Presley was afforded all the due-process protections required by *Morrissey*, and Presley was not prejudiced by the trial court's failure to hold a preliminary hearing. *Rusche*, 813 So. 2d at 790.

¶16.    On May 24, 2005, Presley was served with notice in the form of a Notice of Hearing on the Petition to Revoke Suspended Sentence by the Forrest County Sheriff's Department. On June 2, 2005, the trial court held a hearing at which testimony for both sides was presented to the trial court. The trial court thereafter concluded that Presley had violated the terms and conditions of his suspended sentence and revoked his probation. Thus, the trial court provided Presley with all the due-process protections required under *Morrissey* and *Gagnon* as to the determination of whether probable cause existed to believe Presley had violated the conditions of his probation.  Therefore, this Court finds that Presley was not prejudiced and accordingly concludes that the trial court's failure to hold a preliminary probable-cause hearing was harmless error.

## CONCLUSION

¶17.    This Court finds that Presley was afforded all the due-process safeguards required by *Morrissey* and *Gagnon* and concludes that the trial court's failure to conduct a preliminary

7

probable cause hearing was harmless error. Accordingly, the trial court's decision denying

Presley post-conviction relief is affirmed.

¶18.    **AFFIRMED.**

      **WALLER, C.J., CARLSON, P.J., DICKINSON, RANDOLPH, LAMAR, KITCHENS, CHANDLER AND PIERCE, JJ., CONCUR.**